**Lloyd THOMPSON, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 79–3759.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1981.

Decided Jan. 11, 1982.

Rehearing Denied March 31, 1982.

Paul Ashby, Long Beach, Cal., for plaintiff-appellant.

Jerry J. Bassett, Asst. Regional Atty., San Francisco, Cal., argued, for defendant-appellee; Michael Wolfson, Asst. U. S. Atty., Los Angeles, Cal., on brief.

*The Honorable Gus J. Solomon, Senior United States District Judge, District of Oregon, sitting by designation.

Before ALARCON and NELSON, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

Lloyd Thompson, appellant, filed an action in the district court to review his claim for disability benefits and for supplemental security income (SSI), both of which had been denied by the Secretary of Health and Human Services (Secretary).[1] The district court adopted the recommendation of the magistrate, to whom it had referred appellant's claims, and granted summary judgment in favor of the Secretary. Thompson appeals.

Thompson, now 52, worked primarily as a sheet metal worker and bottler until 1967, after which he has not lived nor worked outside a sheltered environment. From July, 1967 until 1975, he lived in a residential ward of Wadsworth Veterans' Hospital. While there he was treated for epilepsy, alcoholism and respiratory disease and he suffered fractures of the knee and leg in accidents at the hospital.

He suffered many grand mal and even more petit mal epileptic seizures. In fact, from July 1967 to December 1971, he suffered from two to twenty petit mal seizures every other week and from one to four grand mal seizures every few months. For at least two years thereafter, the number of seizures increased but later decreased substantially as a result of increased medication.

Beginning in 1967 and continuing for at least ten years, Thompson was frequently diagnosed and treated for chronic alcoholism. The physicians and other members of the hospital staff concluded that alcohol abuse often preceded his epileptic seizures, and caused his accidents. Nevertheless, Thompson repeatedly denied he used alcohol. On one occasion he stated that he was not drinking whiskey and that he was only drinking ten bottles of beer a day.

1. Formerly, Secretary of Health, Education and Welfare.

Thompson was released from his duties as a receptionist because of his drinking and he was transferred from the Veterans' Hospital to an alcoholic rehabilitation center where it was reported that he had no work tolerance. His treatment for alcoholism was a failure.

Thompson suffers from shortness of breath and chronic bronchitis, which at times become acute. A spirometric test showed that Thompson's lung capacity was less than one half of normal.

X-Ray reports revealed degenerative osteoarthritis of the cervical spine with a compression fracture of C7.

While at the Veterans' Hospital, he worked part-time for short periods as a packer assembler, instrument cleaner and receptionist clerk. The only description in the record of the work that he performed related to his job as a receptionist at the Veterans' Hospital. In that job he answered a few telephone calls a day but even that work was frequently interrupted—by a broken knee (1970), by an alcohol treatment program (1971), by a broken tibia and fibula (1973) and permanently by his transfer to an alcohol rehabilitation center (1975). In 1976, Thompson was transferred to a convalescent hospital and he now lives in a retirement home.

Thompson, without being represented by a lawyer or anyone else, applied for disability benefits in 1970, 1972 and 1975. Each application was denied without a hearing because the agency found Thompson "could still do entry level sedentary work."

In 1976, Thompson applied for SSI benefits. In 1977, he again applied for disability benefits. In August, 1977, an Administrative Law Judge (ALJ) held one hearing on both claims.

When the hearing opened, the ALJ noted that Thompson had been informed by written notice of his right to be represented by an attorney. Since Thompson was at the hearing alone, the ALJ assumed that Thompson wished to proceed by himself. Thompson, after saying, "Well, I really don't have much more information than what's already here," said he wished to proceed.

The ALJ asked Thompson about his age, weight, and present address. He then asked Thompson a series of leading questions, many of which were adversarial in nature. Some of the answers were not properly recorded, and a few were unintelligible. Nevertheless, it appears that Thompson testified that at the hospital he and two others engaged in work therapy for about an hour a day as a receptionist for a doctor, and sat around and smoked for about six or seven hours a day. They received about three sick calls a week and Thompson could type about five or ten words a minute. He also did some rehabilitation work as a packer and instrument cleaner, but there was no testimony on the nature or duration of this work. He apparently also worked as a receptionist for a social worker at the hospital where he answered three or four telephone calls a day.

Thompson testified that he was short of breath, but he thought that he could walk two blocks, and that he might be able to sit at a desk and assemble things if he didn't have seizures. He was getting seizures less often because he was receiving the right medication. He was willing to work, but no one would hire him if they found out that he had seizures, and that he was undergoing treatment.

The ALJ asked no questions about Thompson's alcoholism, about the frequency and severity of his epileptic seizures, or its causes and effects upon him; nor did the ALJ ask about Thompson's back condition caused by degenerative osteoarthritis of the cervical spine, about the causes of his shortness of breath, or about the spirometric test which showed his lung capacity was less than half of normal. The ALJ did not ask about the combined effects of these impairments.

A physician under contract with the S.S.A. as a medical expert asked Thompson a few more questions, and stated that he had reviewed the medical record. He then testified that Thompson had idiopathic epilepsy, obstructive lung disease or emphyse-

ma, and left knee surgery. He stated that these were ongoing impairments during the period in question, and that these conditions, according to the documents, were moderate and at times acute and severe. When the ALJ asked whether Thompson could spend eight hours a day at a desk using his hands and arms, the medical expert stated, "according to his testimony he could do that." On the basis of Thompson's testimony that he could walk two blocks before becoming short of breath, the expert noted that the emphysema has probably worsened. He also testified that Thompson should not work in high places or near moving machinery, and should not descend stairs without a handrail. However, he thought that Thompson could alternately sit and stand eight hours a day.

The ALJ's decision summarized this testimony, and noted without comment that the doctor who had been treating Thompson believed he was not eligible to return to work because of his seizures. The findings stated that Thompson's epilepsy had improved since 1975 and that he has moderate obstructive lung disease. The ALJ concluded that these impairments do not constitute a "disability" as defined by the Social Security Act, and that Thompson was not entitled to Supplemental Security Income disability benefits.

### The SSI Claim

The claimant has the burden to establish a prima facie case showing an inability to engage in previous occupations. The burden then shifts to the Secretary to show that other substantial work, for which the claimant is qualified, exists in the national economy. *Hall v. Secretary of HEW*, 602 F.2d 1372, 1375 (9th Cir. 1979); *Cox v. Califano*, 587 F.2d 988, 990 (9th Cir. 1978).

The ALJ's findings are conclusive if supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Harris*, 625 F.2d 311, 312 (9th Cir. 1980). On review, the court considers the record as a whole, not just the evidence supporting the decision of the ALJ. *Walker v. Matthews*, 546 F.2d 814, 818 (9th Cir. 1976).

We hold that the ALJ's findings were not supported by substantial evidence. In addition, the ALJ's failure to pursue relevant avenues of inquiry, or to assist the claimant, who appeared pro se, deprived Thompson of his right to an impartial decision based upon an adequate record.

Thompson's petit mal attacks were recurrent and unpredictable. His epilepsy is disabling. *See Blevin v. Fleming*, 180 F.Supp. 287, 293 (W.D.Ark.1960). His extended hospitalization was primarily caused by epilepsy. The evidence indicates that he had no chance of obtaining gainful employment, including sedentary work, as long as there was a likelihood that one of the seizures might occur. *See Hammonds v. Celebrezze*, 260 F.Supp. 992, 995 (N.D.Ala.1965).

Thompson was continuously hospitalized for approximately nine years—from 1967 through 1976. The record shows that he broke his knee in 1967, completed an alcoholic program in 1971, broke his tibia and fibula in 1973, and was put on 40 days restriction in 1974 due to alcoholism. He was removed as a receptionist because of his drinking. He participated in alcohol rehabilitation programs, but his improvement was minimal. The ALJ found that Thompson's alcoholism was controlled, but the evidence to the contrary was overwhelming. Thompson was disabled by alcoholism within the meaning of the Social Security Act. *See Johnson v. Harris*, 625 F.2d 311, 313 (9th Cir. 1980); *Griffis v. Weinberger*, 509 F.2d 837, 838 (9th Cir. 1975).

Thompson's past performance in sheltered work activity did not establish an ability to engage in gainful employment. An individual who can do limited work is not automatically denied benefits, unless the Secretary shows he is capable of *increased* use of his work skills or abilities. *See* 20 C.F.R. § 416.932(a) (1980) (revised

and recodified 1981).[2] The ALJ did not inquire into Thompson's ability to increase the use of his work skills in the sheltered hospital setting. Furthermore,

> (A)n individual's failure, because of his impairment, to perform ordinary or simple tasks satisfactorily without supervision or assistance beyond that usually given other individuals performing similar work, may constitute evidence of an inability to engage in substantial gainful activity.

20 C.F.R. § 416.932(d) (1980) (revised 1981). Thompson's extended hospitalization and need for supervision is evidence of his disability. The ALJ's finding that Thompson acquired transferrable job skills while in the hospital is not supported by the evidence.

Thompson received less than one dollar an hour for his work as a packer and assembler in a sheltered workshop in the hospital. This does not show that he could adapt to similar work in the economy. *See* 20 C.F.R. § 416.934 (1980) (revised 1981 under § 416.974). A finding that a hospitalized individual is qualified for gainful employment simply because he retains some minimal mobility is arbitrary and capricious, absent some reasonable explanation in the record. *See* 20 C.F.R. § 416.932 (1980) (revised and recodified under § 416.972–74).

The ALJ also failed to consider new evidence of Thompson's diminished breathing capacity caused by his lung disease. Thompson's frequent epileptic seizures, his chronic alcoholism, his inability to perform work except in a sheltered environment, and his diminished breathing capacity, combined with Thompson's lack of counsel, resulted in improper adjudication of his SSI claim, and a clear denial of his due process rights.

The ALJ's denial of Thompson's SSI claim is not supported by substantial evidence, and must therefore be reversed. The Secretary is directed to grant appropriate SSI benefits to Thompson.

### The Disability Claim

Final decisions of the Secretary may be reviewed by the court if a complaint is filed within sixty days of the decision.[3] Thereafter, a dissatisfied claimant may petition the Secretary for relief; however, the Secretary's decision whether to reopen those claims is discretionary and not subject to review. *Califano v. Sanders*, 430 U.S. 99, 108, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977). Administrative res judicata may apply even though the claimant has never had a hearing, where the claimant has failed to pursue his administrative appeals and no new facts are presented in the subsequent application.

Thompson failed to request a hearing on his 1970, 1972, and 1975 disability applications.

The ALJ found that Thompson's current request for a hearing involves the same pertinent facts and issues that were previously decided, and that the decisions denying those applications were final. AR 42. He then applied administrative res judicata under 20 C.F.R. § 404.937 (1980) (revised and recodified 1981 under § 404.957) to bar Thompson's claim.

We recognize the importance of administrative res judicata; however, enforcement of that policy must be tempered by fairness and equity.

> Neither collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy or result in manifest injustice.

2. 20 C.F.R. § 416.932(a)(1980) provides:

> (A)n individual who utilizes work skills or abilities on a limited basis may not be under a disability *if* he is capable of *increased* utilization of such work skills or abilities.
> (emphasis added) (revised and recodified at § 416.972–74 (1981)).

3. 42 U.S.C. § 405(g) provides:

> "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow..."

*Tipler v. E. I. duPont deNemours and Co.,* 443 F.2d 125, 128 (6th Cir. 1971). Res judicata of administrative decisions does not acquire the rigid finality of judicial proceedings. *Grose v. Cohen,* 406 F.2d 823, 825 (4th Cir. 1969); *Courll v. Weinberger,* 393 F.Supp. 1033 (E.D.Cal.1975). Where the record is patently inadequate to support the findings the ALJ made, application of res judicata is tantamount to a denial of due process. Fairness in the administrative process is more important than finality of administrative judgments. Because these two policies conflict here, res judicata is inappropriate.

When a claimant is not represented by counsel, the ALJ has a duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir. 1972); *Vidal v. Harris,* 637 F.2d 710, 711 (9th Cir. 1981). He must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Rosa v. Weinberger,* 381 F.Supp. 377, 381 (E.D.N.Y.1974); *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir. 1978).

The ALJ asked Thompson no questions about his chronic alcoholism at the hearing. Nor did he investigate the conditions of Thompson's sheltered environment, his extended hospitalization, or the minimal work tasks he tried to accomplish. He made no effort to investigate Thompson's back problems or breathing impairment, which had worsened. His concern with Thompson's work history to the exclusion of all else denied Thompson a full hearing under the Secretary's regulations, and thwarted the beneficent purposes of the Act.

This appeal does not involve the issue, discussed in *Davis v. Schweiker,* decided this day, of whether a claimant whose application is barred by res judicata is entitled to a review of the Secretary's refusal to reopen the case. Here the ALJ improperly invoked the res judicata doctrine.

Thompson's disability claim warrants a full, fair, and adequate hearing. The record of the prior hearing was inadequate.

The ALJ's denial of Thompson's SSI claim is reversed and the Secretary is directed to grant appropriate SSI benefits to Thompson. The denial of Thompson's disability claim on the ground of res judicata is reversed and this claim remanded to the Secretary with instructions to conduct an appropriate hearing.

Reversed in part and remanded in part.