Tommy BLACKBURN, Plaintiff,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services,
Defendant.

No. 84 C 8650.

United States District Court,
N.D. Illinois, E.D.

Aug. 6, 1985.

Michael J. Walkup, Chicago, Ill., for plaintiff.

James P. White, Ass't U.S. Atty., Donna M. Weinstein, Regional Atty., Dept. of Health & Human Services, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Judge.

Tommy Blackburn ("Blackburn") seeks judicial review of a final decision by the Secretary of Health and Human Services ("Secretary") denying Blackburn disability insurance and supplemental security income benefits, initially applied for under Social Security Act ("Act") §§ 216(i), 223 and 1602, 42 U.S.C. §§ 416(i), 423 and 1381a. After a March 12, 1984 evidentiary hearing (the "Hearing"), on May 18, 1984 Administrative Law Judge Irving Stiller-man ("ALJ Stillerman" or simply the "ALJ") denied Blackburn's application. Blackburn then exhausted his administrative remedies in proper sequence (a process that resulted in the ALJ's decision becoming Secretary's) and brought this action against Secretary pursuant to Act § 205(g), 42 U.S.C. § 405(g).

Because this action stands in a different posture from the mine run social security case brought to this Court, Blackburn has not followed the typical course of filing a motion for summary judgment. Rather—for reasons this opinion will explore in due course—he has moved for a remand to the ALJ for further consideration. Secretary, however, seeks summary judgment affirming the ALJ's decision. For the reasons stated in this memorandum opinion and order, each litigant's motion is granted in part and denied in part.

### Medical Background

Blackburn, who was 56 years old at the time of the hearing before ALJ Stillerman and who has completed eight years of schooling, was born in Kentucky, where he worked for a number of years as a coal miner. Since moving to Chicago some 15 years ago, he has worked primarily as a gas station attendant and as a machine operator for several manufacturing concerns. Most recently he worked as a laundromat attendant, a job that ended in 1978 when ownership of the laundromat changed.

Blackburn has suffered a number of injuries (some work-related) over the course of his life. Among them were amputation of the top portion of his left thumb, a broken jaw as a result of which he can open his mouth no wider than an inch, and broken ribs. In addition he suffers "mild respiratory impairment" (R. 224) deriving in part from his work in the coal mines and as a result of which he receives black lung benefits.

Those impairments, which Blackburn has suffered for some time, are not the principal basis for his application for disability benefits. Rather Blackburn focuses on a series of hospitalizations beginning in 1978 for gastrointestinal bleeding:

1. In July 1978 Blackburn was admitted to Swedish Covenant Hospital ("Swedish Covenant"), suffering from black vomiting, black stools and abdominal pain. Tests revealed no ulcer or other course of bleeding. Two days after admission Blackburn was discharged at his own insistence. His discharge summary (R. 109) reflects a diagnosis of upper gastrointestinal bleeding of unknown etiology and describes Blackburn as a "moderate alcohol abuser." Elsewhere in the hospital records he is described as a "known alcoholic."

2. In September 1981 Blackburn was again admitted to Swedish Covenant, this time complaining of shortness of breath and abdominal pain. He was diagnosed as a habitual alcoholic suffering from acute ethanol intoxication (R. 179). While in the hospital he suffered delirium tremens episodes, and tests gave some evidence of myocardial injury, perhaps induced by alcohol. Against medical advice Blackburn signed himself out of the hospital two days after he had been admitted (R. 180).

3. In December 1982 Blackburn was admitted to Swedish Covenant, again with gastrointestinal bleeding. He was released after five days with a diagnosis of possible peptic ulcer disease (R. 197).

4. In October 1983 Blackburn was admitted to Swedish Covenant once again,

this time with a diagnosis of chronic alcoholism, duodenal ulcer, iron deficiency anemia and chronic obstructive lung disease (R. 202). He was released ten days later.

Other evidence on the administrative record includes:

1. a January 19, 1979 report by consulting physician Dr. S. Patel, stating Blackburn suffered from possible peptic ulcer syndrome in addition to the impairments deriving from his earlier work-related injuries;

2. a January 1, 1984 report by Dr. Iraj Delfani, who has treated Blackburn since October 1983, reflecting Blackburn suffers from chronic alcoholism that has resulted in brain damage, a duodenal ulcer and iron deficiency anemia (Dr. Delfani considered Blackburn disabled, primarily on account of the alcohol-induced brain damage); and

3. a March 6, 1984 psychological/occupational evaluation of Blackburn by psychologist William Fischer, finding Blackburn's IQ in the mid-70s and describing Blackburn as "a psychologically, if not physically, impotent individual who carries the diagnosis of alcoholism, organic brain dysfunction with psychosis, and is not capable of participating in any kind of substantial gainful activity" (R. 221).

In support of his current motion Blackburn has offered additional medical evidence discovered after the administrative record was closed. It reflects three hospitalizations in December 1979 and January 1980:

1. On December 16, 1979 Blackburn was admitted to Ravenswood Hospital ("Ravenswood"), complaining he had been coughing and vomiting blood. His discharge summary (Ex. C 44–45) reflects a history of heavy beer consumption and a diagnosis of possible gastric cancer. Blackburn discharged himself against medical advice.

2. On January 6, 1980 Blackburn was again admitted to Ravenswood for further tests designed to confirm or rule out

the diagnosis of gastric cancer. Blackburn again left the hospital before tests could be completed.

3. On January 22, 1980 Blackburn was once more admitted to Ravenswood. This time the contemplated tests were performed, revealing no tumor cells. Blackburn was discharged with a diagnosis of gastric ulcer, to be followed on an outpatient basis.[1]

### Blackburn's Claims History

Blackburn's claims posture is complicated both by eligibility regulations and by his prior history of filing disability claims. To begin with the regulations, a claimant is ineligible for either disability insurance or supplemental security income benefits if he or she does not satisfy the special earnings requirements set out in 20 C.F.R. § 404.-130.[2] Under Section 130(b), which states the applicable rule for present purposes, Blackburn must have acquired 20 "quarters of coverage" in the 40-calendar-quarter (ten-year) period ending with the calendar quarter in which he seeks the commencement of benefits. Because each quarter of coverage is credited on the basis of the claimant's covered earnings in that quarter (Sections 140 to 146), and because Blackburn has had no covered earnings since 1977, he satisfied the special earnings requirement only through June 30, 1979 (R. 97). That termination of Blackburn's insured status under the Act means he could be entitled to benefits only for a period of disability that began no later than June 30, 1979.

Blackburn first applied for disability benefits in July 1978, claiming he had been unable to work since July 1977. That application was initially denied. Pursuing his administrative remedies, Blackburn requested an evidentiary hearing, which took place sometime in 1979. Blackburn represented himself at that hearing. On June 8, 1979 Administrative Law Judge Dale Garwal again denied Blackburn's application (R. 131):

> The claimant was not under a "disability" as defined in the Social Security Act, as amended, at any time up to the date of this decision.

Blackburn's request for Appeals Council review of that decision was denied, and he was notified of his right to seek judicial review of the hearing decision. Blackburn did not pursue that option.

While the record is not altogether clear, it appears Blackburn again applied for disability benefits in 1980 (Ex. C 3) and perhaps 1981 (Ex. C 2). Neither application was pursued to the point of an evidentiary hearing, because Blackburn either failed to seek review or failed to pursue his administrative remedies in proper sequence. For present purposes those two aborted applications are of no consequence.

Blackburn was thus left in a difficult situation. He had been found not disabled as of June 8, 1979, yet his eligibility for commencement of benefits had terminated after June 30, 1979. Blackburn therefore was compelled either (1) to prove he had become disabled between June 8 and June 30, 1979 or (2) to succeed in having Secretary reopen the June 8 decision. He pursued both courses before the ALJ with no success. ALJ Stillerman ruled:

1. More than four years had passed since the June 8, 1979 decision, barring its reopening under the applicable regulations. That rendered the 1979 decision binding on Blackburn as a matter of administrative res judicata.

2. Evidence before the ALJ did not show Blackburn had an impairment before June 30, 1979 that was severe

---

1. Mysteriously, despite the January 1980 diagnosis, Dr. Brinkman, who treated Blackburn at Ravenswood and followed him on an outpatient basis, submitted a June 11, 1980 report in support of a disability claim indicating Blackburn suffered from stomach cancer for which surgery was planned. There is no indication (a) such surgery took place or (b) Blackburn in fact had a stomach tumor.

2. Further citations to 20 C.F.R. will simply take the form (using the regulation cited in the text as an example) "Section 130," omitting the prefatory "404."

enough to limit his ability to perform basic work activities.

Blackburn challenges both decisions.

### Refusal To Reopen and Administrative Res Judicata

ALJ Stillerman based his decision not to reopen the 1979 decision on Section 988:

A determination, revised determination, decision, or revised decision may be reopened—

    (a) Within 12 months of the date of the notice of the initial determination, for any reason;

    (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case.

Then the regulation goes on to specify particular situations—none applicable to this case—sufficient to warrant reopening at any time. Noting the 1979 decision had been made well over four years before the Hearing (where Blackburn first raised the possibility of reopening the decision), ALJ Stillerman held he had no basis in the regulations for granting the sought-after relief.[3] Accordingly he concluded (R. 8):

[T]he prior Administrative Law Judge's decision stands as the final decision of the Secretary as to the claimant's condition through June 8, 1979.

■ Califano v. Sanders, 430 U.S. 99, 108, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977) teaches Secretary's refusal to reopen a prior decision and her concomitant invocation of administrative res judicata are not generally open to district court review. As Steebe v. United States Railroad Retirement Board, 708 F.2d 250, 255 (7th Cir.), cert. denied, — U.S. —, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983) put it (interpreting the Social Security Act en route to apply the same reasoning to a Railroad Retirement Act claim):

In Sanders, the Court held that neither section 10 of the Administrative Procedure Act nor section 205(g) of the Social Security Act afforded district courts subject matter jurisdiction to review a decision of the Secretary of Health and Human Services not to reopen a previously adjudicated claim for Social Security benefits.

But Sanders, 430 U.S. at 109, 97 S.Ct. at 986 did recognize an exception to that general rule where the refusal to reopen the decision raised a constitutional question not suited to resolution by administrative process (and see Steebe, 708 F.2d at 256).

That exception does not encompass the case where the only flaw shown is a claimant's non-representation by counsel at an administrative hearing. Holland v. Heckler, 764 F.2d 1560, 1561–63 (11th Cir.1985) (per curiam). Nor may the exception be invoked on the theory it violates due process to refuse to reopen a decision that itself violated the applicant's due process rights. Steebe, 708 F.2d at 256. One narrow window has been opened by a number of courts, exemplified by Elchediak v. Heckler, 750 F.2d 892, 893 (11th Cir.1985):

[A] claimant suffering from mental illness raises a colorable constitutional claim when he asserts that his mental illness precluded him from litigating his

---

**3.** This case is distinguishable from Hennings v. Heckler, 601 F.Supp. 919, 925 (N.D.Ill.1985) where this Court's colleague Judge Plunkett measured the Section 988(b) four-year period from (1) the date of the hearing officer's decision on the first application (the "initial determination" in the terms of the regulation) to (2) the date of filing of the second application, on the theory that the second application was treated by Secretary as a request to reopen the first decision. Here there is no evidence Secretary treated Blackburn's most recent application as a request to reopen the 1979 decision, and Blackburn himself did not make such a request until the Hearing. Hence the relevant period began to run June 8, 1979 (the date of notice of the initial determination) and did not end until Blackburn made his request to reopen at the March 12, 1984 Hearing—a period of nearly five years. That analysis is not altered by the fact of Blackburn's 1980 (and perhaps his 1981) application. Though the 1980 application was plainly within the four-year period prescribed by Section 988(b) (and perhaps within the 12-month period mentioned in Section 988(a) ), there is nothing to indicate it was treated as a request to reopen the prior proceeding. Again, that question was not posed to Secretary either explicitly or implicitly until the Hearing.

claim because it prevented him from proceeding from one administrative level to another in a timely fashion.

*Accord, Penner v. Schweiker,* 701 F.2d 256, 260–61 (3d Cir.1983); *Parker v. Califano,* 644 F.2d 1199, 1201–03 (6th Cir.1981); *Shrader v. Harris,* 631 F.2d 297, 300–02 (4th Cir.1980).

Blackburn does not claim for himself the mental impairment exception recognized by *Elchediak* and like cases.[4] Instead he invokes the authority of *Thompson v. Schweiker,* 665 F.2d 936, 941 (9th Cir.1982) (citations omitted):

> Res judicata of administrative decisions does not acquire the rigid finality of judicial proceedings.... Where the record is patently inadequate to support the findings the ALJ made, application of res judicata is tantamount to a denial of due process. Fairness in the administrative process is more important than finality of administrative judgments.

Blackburn claims he was a chronic alcoholic and therefore mentally impaired at the time of the 1979 hearing. As a result he says he was unable to represent himself adequately—like many alcoholics, he had then denied he had a drinking problem—and the ALJ did not meet his responsibility to assure a full examination of the evidence in a case where the claimant is not represented by counsel.

Because no transcript of the 1979 hearing is before this Court, it is difficult to assess the adequacy of that proceeding. But from the 1979 decision alone, it does seem the hearing officer fairly took account of the record evidence before him—evidence that included only one reference to Blackburn's alcoholism (the July 1978 Swedish Covenant record referring to him as a "moderate alcohol abuser"). At least the limited evidence as to the 1979 record tendered this Court is not, in *Thompson* terms, "patently inadequate to support the findings the ALJ made."

■ Moreover, it is doubtful *Thompson* represents the law in this Circuit. Effectively the *Thompson* doctrine holds that where an administrative decision has violated due process, a later refusal to reopen that decision does so as well. But that proposition was specifically negated by our Court of Appeals in *Steebe,* 708 F.2d at 256.[5]

■ All of the preceding discussion compels a conclusion this Court lacks subject matter jurisdiction under Act § 205(g) to review ALJ Stillerman's (1) refusal to reopen the 1979 decision and (2) invocation of administrative res judicata.[6] Blackburn's claim must be dismissed in those respects.

*Findings as to the June 8 to June 30, 1979 Period*

Blackburn advances three reasons supporting remand to determine whether he

---

**4.** Any such contention would have to explain his apparent competence to carry his 1979 claim through to Appeals Council review. That successful negotiation of administrative procedure must render suspect any contention his failure to take the final step—to seek judicial review—was attributable to a mental impairment.

**5.** Again, had Blackburn been mentally impaired so as to have been unable to pursue judicial review of an allegedly constitutionally deficient decision, a refusal to reopen might well have been reviewable under the cases construing the *Sanders* exception. But as already noted, Blackburn has made no such claim, nor is there evidence suggesting he could.

**6.** Though Blackburn does not raise the issue, Secretary is at pains to point out this Court lacks jurisdiction under 28 U.S.C. § 1361, the federal mandamus statute, to review the ALJ's refusal to reopen the 1979 decision. While it appears mandamus jurisdiction "is available where the writ would properly issue" against Secretary (*City of New York v. Heckler,* 742 F.2d 729, 739 (2d Cir.1984); and see *Attorney Registration and Disciplinary Commission of Supreme Court of Illinois v. Schweiker,* 715 F.2d 282, 290 (7th Cir.1982) ), this is not such a case—as *Hennings,* 601 F.Supp. at 924–26 arguably was. Here the ALJ did not misinterpret the applicable regulations nor, as a consequence, deny "a clear right in the plaintiff to the relief sought." *Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072, 1084 (7th Cir.1982).

became disabled between June 8, 1979, the date of the prior decision, and June 30, 1979, the date his insured status expired:

1. New medical evidence has come to light since the Hearing, indicating Blackburn was disabled before June 30, 1979.

2. ALJ Stillerman failed to consider post-June 30, 1979 medical evidence that indicated Blackburn's disability *before* that date.

3. ALJ Stillerman improperly applied the severity requirement of Section 1520(c) to deny Blackburn's claim.

Those contentions will be dealt with in turn.

Although the ALJ's decision (like the 1979 decision) addresses a number of claimed physical impairments, Blackburn's remand motion is focused on the proposition he is—and was—disabled because he is an alcoholic. Without question that proposition accurately describes his present condition. Dr. Delfani's report, psychologist Fischer's opinion, hospital records and the Hearing evidence all strongly suggest Blackburn is incapable of substantial gainful activity as a result of alcohol abuse. That, however, is not enough: Blackburn must show he became so impaired between June 8 and June 30, 1979. Accordingly his first two arguments for remand are directed to that issue.

■ Act § 205(g) calls for a remand to take added evidence on a showing that "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record at a prior proceeding." Here the "good cause" requirement is satisfied by an affidavit of Blackburn's counsel, which reflects the prior unavailability of the additional evidence was attributable to forces beyond his control. As for materiality, the prevailing standard is whether it is "reasonably possible" the new evidence would have affected the prior determination. *Czubala v. Heckler,* 574 F.Supp. 890, 901 (N.D.Ind. 1983). That test calls for more extended

analysis of the record, but the recapitulation that follows plainly shows it has been met.

■ For one thing, ALJ Stillerman placed some emphasis on Blackburn's not having been hospitalized frequently for intoxication, adding (R. 10):

Indeed he was not hospitalized at all between July 1978 and September 1981.

Relatedly the ALJ also noted most of the evidence of Blackburn's alcohol-related impairment significantly postdated June 30, 1978. Both those points are impacted by the late 1978 and early 1980 Ravenswood records, which (1) reflect Blackburn's hospitalization between 1978 and 1981 and (2) refer to a long history of alcohol abuse (Ex. C 34, 42, 44). That new evidence thus serves to establish a link between the 1981–83 medical evidence and the period before June 30, 1979. Because alcoholism is not a disease that arises suddenly, and in light of the ALJ's express statement as to Blackburn's hospitalization record, there is at least a "reasonable possibility" the ALJ would have evaluated the evidence before him differently had he had the opportunity to review the Ravenswood records.

As the preceding discussion suggests, Blackburn's first argument also brings his second directly into play. *Gallimore v. Harris,* 511 F.Supp. 782, 784 (N.D.Ill.1981) confirms that linkage:

[M]edical evidence of a subsequent condition of health, reasonably proximate to the preceding time, may be used to establish the existence of this condition at a preceding time.

But of course a factfinder must have some predicate for viewing medical evidence as probative of a claimant's condition at some prior date. Here the ALJ's decision does not make at all clear whether he found no such predicate or whether he simply overlooked the question. While that alone might arguably warrant remand, certainly the remand to consider new evidence will allow the ALJ to look again at the later

medical evidence in light of both the newly proffered evidence and the record as a whole.

■ Before moving to Blackburn's third contention supporting remand, this Court notes one further evidentiary matter. ALJ Stillerman's decision makes no reference to the Hearing testimony of Blackburn's wife that Blackburn has consumed at least 12–18 cans of beer daily for many years, one result of which has been a high absentee rate at his various jobs. That testimony, of course, gives credence to Blackburn's claim of disability. While the ALJ may have had reasons for discounting that clear evidence in reaching his contrary conclusion, it is important that he articulate them. *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984); but see *Stephens v. Heckler*, 766 F.2d 284, 287–88 (7th Cir.1985), and this Court's discussion of *Stephens* in *Hennessy v. Heckler*, No. 84 C 10058, slip op. at 11 n. 2, 12 n. 4 (N.D.Ill. June 27, 1985).[7] Again the remand to consider new evidence provides a suitable opportunity in that regard.

■ Blackburn's third contention for remand must be evaluated in light of last week's decision by our Court of Appeals in *Johnson v. Heckler*, 769 F.2d 1202 (7th Cir.1985). *Johnson* affirmed Judge Bua's holding (593 F.Supp. 375 (N.D.Ill.1984)) that Secretary's reliance on the severity requirement—step 2 of the sequential analysis prescribed by Section 1520 and described in *Garfield v. Schweiker*, 732 F.2d 605, 607 n. 2 (7th Cir.1984)—was inconsistent with the terms of the Act itself. Under the Act, once the claimant bears the prima facie burden of demonstrating "an impairment which prevents him from performing his previous work," (*Johnson*, at 1210, quoting *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982)):

> The burden then shifts to the Secretary to show that claimant remains capable of performing other work in view of the vocational factors of age, education, and work experience: "[o]nce an impairment of sufficient severity is demonstrated ... which precludes the type of work previously engaged in the burden of going forward shifts to the Secretary."

*Johnson* concluded Secretary's application of the severity requirement—her reference exclusively to medical evidence (see SSR 82–56) and particularly her reliance on a list of illustrative impairments deemed to be per se nonsevere (see SSR 82–55)—failed to respect that allocation of the burden of going forward.

True enough, ALJ Stillerman's decision does not reflect the particular shortcoming most comprehensively addressed in *Johnson*—reliance on SSR 82–55. But it is seriously questionable whether the ALJ's decision comports with the broader teaching of *Johnson* as to the allocation of burdens. At one point the ALJ stated (R. 8) (emphasis added):

> Applying the sequential disability evaluation established by the Regulations, the Administrative Law Judge notes that the claimant has not engaged in substantial gainful activity since 1978. Therefore, it is necessary to evaluate the severity of the claimant's medical problems *and the extent to which those problems have limited his ability to perform his past or other work.*

Then later the ALJ expressly found (R. 11):

> The claimant did not have any impairment or combination of impairments severe enough to significantly limit his ability to perform basic work activities.

Those passages create doubt whether the discussion of Blackburn's medical condition throughout the ALJ's decision was focused on the question whether the claimant has met his burden of showing an impairment severe enough to prevent his return to his past work (a permissible inquiry), or in-

---

7. Our Court of Appeals' most recent decision in this area, next discussed in the text, acknowledges the tension between *Zblewski* and *Stephens* and treats the subject as one not fully resolved among the judges on that Court. *Johnson*, at 1212.

stead on the question posed—improperly—at step 2 of the sequential analysis.

Any finding on the first of those questions remains within the ALJ's purview. But post-*Johnson*, a finding on the second is not, at least without reference to "vocational factors of age, education, and work experience and residual functional capacity." 593 F.Supp. at 379. Consequently a remand to Secretary is necessary for clarification of precisely what question the ALJ set out to decide, and perhaps for reconsideration in light of *Johnson*. In the latter respect, the aggregate effect of all Blackburn's impairments (and not just that of alcoholism) must also be considered. *Johnson*, at 1212–1215.

### Conclusion

This Court is without subject matter jurisdiction to review Secretary's refusal to reopen the 1979 decision and her concomitant application of administrative res judicata. However, Secretary's decision that Blackburn did not become disabled prior to June 30, 1979 is vacated and remanded for reconsideration in light of this opinion. In terms of the motions generating this opinion:

1. Blackburn's motion for remand is granted in part and denied in part.

2. Secretary's motion for summary judgment is also granted in part and denied in part.