Filed 4/2/24  Jones-Gentry v. Department of Corrections and Rehabilitation CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| DANETTE JONES-GENTRY, | C095008 |
| Plaintiff and Appellant, | (Super. Ct. No. 62519) |
| v. | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | |
| Defendants and Respondents. | |

Danette Jones-Gentry was hired by the Department of Corrections and Rehabilitation (CDCR) to serve a one-year probationary period as a teacher in one of their facilities.  Jones-Gentry was rejected during that probationary period, and she elected to challenge her rejection via an administrative proceeding before the State Personnel Board (Board).  In that proceeding, Jones-Gentry argued the reasons for the rejection were not supported by substantial evidence and were made in "bad faith," as evidenced by respondents' failure to respond to her complaint of disability

1

discrimination.  The Board rejected Jones-Gentry's appeal, finding that her rejection was in fact supported by substantial evidence and was not motivated by bad faith or based on any discriminatory motive.  Jones-Gentry did not seek judicial review of the Board's ruling in superior court.  Instead, she filed a civil action against CDCR and two of her former supervisors (collectively, respondents) asserting six causes of action under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.)[1] including disability discrimination and failure to provide reasonable accommodations.  The trial court granted respondents' motion for judgment on the pleadings, concluding collateral estoppel bars Jones-Gentry's FEHA action because of the preclusive effect of the Board's unchallenged prior ruling.  Jones-Gentry appeals the trial court's ruling, and we affirm.

BACKGROUND

When reviewing an order granting a motion for judgment on the pleadings, we accept as true all material allegations in the complaint.  (*National Shooting Sports Foundation, Inc. v. State of California* (2018) 5 Cal.5th 428, 432.)

In July 2016, Jones-Gentry began working for CDCR as a teacher for prison inmates.  While walking to a prison classroom in November 2016, she tore a meniscus in her knee.  When she tried to return to work in early December 2016 with a doctor's work restriction that she limit walking, CDCR told her it would not accommodate her.  In a late December 2016 letter, CDCR told her there were no reasonable accommodations for her and that she could return to work without work restrictions or "provide a clear doctor's note requesting accommodations."

Later, Jones-Gentry claimed her supervisors made her work life "miserable."  One supervisor yelled at her, prohibited her from using shorter walking routes on prison

---

[1] Undesignated statutory references are to the Government Code.

grounds that other employees were allowed to use, moved her workstation without explanation, and did not provide her with necessary equipment and supplies. Another supervisor told her she was " 'a very expensive employee,' " that he " 'would write . . . [her] up' " if they were in the private sector, and wrote false performance reviews stating she often left work early. Jones-Gentry filed grievances with her union complaining about her supervisors' conduct, but "[n]othing ever came of it."

In July 2017, CDCR gave Jones-Gentry a "Notice of Rejection" during her one-year probationary period, the grounds for which included (1) being late for work, leaving work early, or being absent from work 55 times; (2) bringing an unauthorized cell phone into her classroom; (3) using her state-issued "personal alarm" whistle to get the attention of an inmate, prompting custody staff to respond to her classroom; and (4) dozens of data entry errors. The prison warden refused to investigate her complaints "regarding disability discrimination and [the] accuracy of her performance evaluations."

Jones-Gentry challenged her rejection before the Board. CDCR argued Jones-Gentry failed to meet her burden of proof to show either (1) a lack of substantial evidence supporting the reasons it rejected her or (2) that the rejection was based on fraud or bad faith. In December 2017, an administrative law judge (ALJ) affirmed the rejection in a written decision that included factual findings.

The ALJ determined the rejection was supported by substantial evidence and was not motivated by bad faith. Regarding the second determination, the ALJ explained that Jones-Gentry "argue[d] that [CDCR] engaged in bad faith because it failed to respond to the disability discrimination complaint she raised" in response to the notice of rejection. The argument was "specious," the ALJ explained, in part because Jones-Gentry "submitted no evidence to establish that she ever filed a discrimination complaint" with CDCR.

In a February 2018 resolution and order, the Board adopted the ALJ's decision. Jones-Gentry did not seek judicial review of the Board's order by means of a mandate

3

action in superior court. (See Code Civ. Proc., § 1094.5.) Instead, she filed a lawsuit against CDCR and her supervisors in July 2019 raising six causes of action under the FEHA: (1) disability discrimination, (2) failure to provide reasonable accommodation, (3) failure to engage in a good faith interactive process; (4) harassment/hostile work environment, (5) failure to prevent harassment/hostile work environment, and (6) retaliation. All causes of action were against CDCR and the harassment/hostile work environment cause of action was also against Jones-Gentry's supervisors.

Ultimately, the trial court granted respondents' motion for judgment on the pleadings, ruling principles of collateral estoppel barred Jones-Gentry's FEHA action because she (1) elected to challenge her rejection with the Board, (2) "was afforded the opportunity to prove her case and raise all of her claims of bad faith and discrimination," and (3) "failed to prove her case or have the adverse determination set aside." Citing *Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860 (*Murray*), the trial court emphasized the importance of Jones-Gentry having the opportunity to litigate her discrimination claims with the Board.

The trial court denied leave to amend and dismissed Jones-Gentry's action with prejudice. Jones-Gentry filed a timely notice of appeal in September 2021. Her opening brief was filed in February 2023, this case was fully briefed on December 12, 2023, and the matter was argued on March 19, 2024.

DISCUSSION

I

*Principles of Collateral Estoppel and Judicial Exhaustion Bar the FEHA Action*

  A. *Collateral Estoppel and Judicial Exhaustion*

Collateral estoppel or issue preclusion is a "distinct aspect of res judicata," a doctrine that " ' "gives conclusive effect to a former judgment in subsequent litigation between the same parties involving the same cause of action. . . . Collateral estoppel . . . involves a second action between the same parties on a *different* cause of action. The

4

first action . . . operates as an estoppel or conclusive adjudication as to such issues in the second action which were actually litigated and determined in the first action." ' " (*Murray, supra*, 50 Cal.4th at pp. 864, 866-867, italics added.)

"But the rule goes further.  If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged."  (*Interinsurance Exchange of the Auto. Club v. Superior Court* (1989) 209 Cal.App.3d 177, 182, italics omitted.)

" 'Judicial exhaustion' " is a "corollary" of the collateral estoppel doctrine, whereby final decisions of administrative agencies acting in a judicial or quasi-judicial capacity have preclusive effect.  (*Murray, supra*, 50 Cal.4th at p. 867.)  Judicial exhaustion " 'may arise when a party initiates and takes to decision an administrative process—whether or not the party was required, as a matter of *administrative* exhaustion, to even begin the administrative process in the first place.  Once a decision has been issued . . . respect for the administrative decisionmaking process requires that the prospective plaintiff . . . exhaust[] any available judicial avenues for reversal of adverse findings.  (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 69-72 [(*Johnson*)].)  Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims.' "  (*Murray,* at p. 867; *Johnson,* at pp. 69-70 ["unless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil action"].)

In *Johnson*, our Supreme Court ruled a public employee who challenged a dismissal on discrimination grounds through administrative civil service remedies, received an adverse finding, and failed to have the finding set aside through judicial review procedures, was bound by the adverse finding in a later civil action raising discrimination claims under the FEHA.  (*Johnson, supra*, 24 Cal.4th at pp. 65-67, 72, 76;

5

see *Murray, supra*, 50 Cal.4th at pp. 876-877.) " 'The failure of a litigant to introduce relevant available evidence on an issue does not necessarily defeat a plea of collateral estoppel,' " because the important thing is that a party has " 'the opportunity and incentive to present' " the relevant evidence in the prior proceeding. (*Murray,* at p. 871.)

Consider our Supreme Court's discussion in *Murray* regarding *Takahashi v. Board of Education* (1988) 202 Cal.App.3d 1464. There, "a public school teacher claiming she was wrongfully terminated for incompetency was found collaterally estopped from pursuing her civil and constitutional claims in court because she had failed to raise those claims as defenses to the charges of incompetency at the administrative hearing conducted before the Commission on Professional Competence . . . . [Citation.] The *Takahashi* court observed, 'There can be no justification for plaintiff's position that she should be permitted to fail to assert at the administrative hearing constitutional and civil rights violations as reasons that made her termination wrongful, fail to prevail on the writ without attempting to urge or to bring before the court those reasons, and then be allowed to recover damages in this consolidated [court] action that resulted from termination of her employment alleged to be wrongful based on those same reasons.' " (*Murray, supra*, 50 Cal.4th at p. 873.) Our Supreme Court explained that the relevant principle in *Takahashi* was that the party against whom issue preclusion was sought was afforded a hearing in the prior administrative proceeding, "but failed to take full advantage of the opportunity to fully establish" the party's claims at the hearing. (*Ibid*.)

B.     *Grounds for Challenging a Rejection During Probation*

1.     *Relevant Government Code Provisions*

Upon the written request of a "rejected probationer," the Board "may investigate with or without a hearing the reasons for rejection. After investigation, the board may do any of the following: [¶] . . . [¶] (d) Restore him or her to the position from which he or she was rejected, but this shall be done only if the board determines, after a hearing, that there is no substantial evidence to support the reason or reasons for rejection, or that the

rejection was made in fraud or *bad faith*." (§ 19175, italics added.) A probationer may not be rejected "for any cause constituting prohibited discrimination as set forth in [s]ections 19700 to 19703" (§ 19173), which concern discrimination based on age (§ 19700), blindness (unless normal eyesight is necessary to a position) (§ 19701), "medical condition, mental disability, or physical disability" as those terms are defined in section 12926 (§ 19702, subd. (a)), and political or religious opinion (§ 19703). Here, we are concerned with section 19702's prohibition on the rejection of a probationer based on a physical disability.[2] Relatedly, section 12926 holds that " 'physical disability' includes, but is not limited to" having a physiological condition that affects the body's musculoskeletal system and makes "difficult" the achievement of any major life activity, including "working." (See § 12926, subd. (m)(1)(A), (B).)

2.    *Relevant Case Law*

"Our state Constitution provides that, except as exempted by the Constitution, every officer and employee of the state is within the civil service and '[i]n the civil service permanent appointment and promotion shall be made under a general system based upon merit ascertained by competitive examination.' [Citation.] The Constitution creates the . . . Board and vests it with jurisdiction over the merit aspects of civil service including the enforcement of civil service statutes, the prescription of probationary periods and classifications, and the review of disciplinary actions. [Citations.] Included in the . . . Board's authority is the power to review a decision of an appointing power to

_____

[2] Subdivision (b) of section 19702 provides that "harassment" is a form of prohibited discrimination, and subdivision (f) provides that if an employee demonstrates by a preponderance of the evidence that "opposition to any practice made an unlawful employment practice under this section" was a "contributing factor in any adverse employment action" taken against an employee, then the "appointing power" must demonstrate by clear and convincing evidence that the adverse employment action "would have occurred" for legitimate reasons independent of the employee's opposition to the unlawful practice.

reject a probationer and to take appropriate action up to and including restoration of employment with an award of backpay." (*Dyer v. Workers' Comp. Appeals Bd*. (1994) 22 Cal.App.4th 1376, 1383-1384.)

"Even if the board finds the reason or reasons given by the appointing power for rejecting a probationer are supported by substantial evidence, it must still reinstate the probationer if it finds . . . the rejection was . . . made in bad faith. (§ 19175, subd. (d).)" (*Carrasco v. State Personnel Bd*. (2021) 70 Cal.App.5th 117, 148.) Bad faith "might be demonstrated even where an employer has a range of permissible actions if the choice were driven by animus against" the employee. (*Ibid.*)

C.      *Analysis*

We review the court's ruling de novo and must uphold it if it was correct on any legal theory raised by the parties even if the trial court did not rely on those grounds. (*Julian Volunteer Fire Co. Assn. v. Julian-Cuyamaca Fire Protection Dist.* (2021) 62 Cal.App.5th 583, 598.) Here, Jones-Gentry elected to challenge her rejection during probation in an administrative hearing before the Board at which she had the opportunity to present evidence and make argument.[3] In that hearing, she articulated a nexus between her rejection and disability discrimination, asserting CDCR's failure to respond to her complaint of disability discrimination showed that her rejection was done in bad faith. Consistent with that assertion before the ALJ, Jones-Gentry contends in her appellate briefing that an employee may "raise prohibited discrimination as an invalid reason for

---

[3] Before the hearing, the Board's chief ALJ ordered the matter be adjudicated on the papers filed by the parties (including "all . . . competent evidence by [d]eclaration"). Jones-Gentry does not challenge the "judicial character" of the Board's ultimate decision. (Cf. *Murray, supra*, 50 Cal.4th at p. 867 [for collateral estoppel to apply to a decision arising out of an administrative process, the decision must be of a "sufficiently judicial character," indicia of which include a hearing before an impartial decision maker, a party's ability to introduce documentary evidence and make argument, and a written statement of reasons for the decision].)

8

her rejection" in a challenge before the Board. We agree. Under the relevant statutory scheme and case law, it is apparent that in the context of a rejection during probation, "bad faith" includes (1) discriminatory animus broadly (see *Carrasco v. State Personnel Bd., supra*, 70 Cal.App.5th at p. 148) and (2) more specifically, discrimination based on a musculoskeletal condition that makes working difficult (§§ 12926, 19702, 19173). A showing that her work environment was permeated by disability discrimination—as reflected by, for example, CDCR's failures to prevent her supervisors from harassing her on account of her disability, to engage in a good faith interactive process with her in an effort to accommodate her physical disability, and to reasonably accommodate her[4]— would have been relevant to and probative of the claim that Jones-Gentry's rejection by CDCR was in bad faith. Likewise, a more specific showing that CDCR rejected her on account of the torn meniscus in her knee, which made it difficult for her to work because it was difficult to move around her workspace, would have been probative of a "bad faith" challenge.

Thus, Jones-Gentry had the opportunity and incentive to raise before the Board all of the interrelated claims of disability discrimination that she raised in her later FEHA action. The Board ruled against Jones-Gentry, and she did not challenge the adverse findings in a mandate action in the superior court. Accordingly, under our Supreme Court's case law, principles of collateral estoppel and judicial exhaustion preclude her FEHA action. (See *Murray, supra*, 50 Cal.4th at p. 871 [importance of a party's " 'opportunity and incentive to present' " relevant evidence in a prior proceeding]; *id.* at p. 873 [" 'There can be no justification for plaintiff's position that she should be

---

**4** See *Gelfo v. Lockheed Martin Corp*. (2006) 140 Cal.App.4th 34, 54 [under the FEHA, an employer's failures to reasonably accommodate a disabled individual and to engage in a good faith interactive process to determine an effective accommodation, once one is requested, are each distinct violations of the statute].

9

permitted to fail to assert at the administrative hearing . . . civil rights violations as *reasons that made her termination wrongful* . . . and then be allowed to recover damages' " in a later civil action " 'based on those same reasons' " (italics added)]; *Johnson, supra*, 24 Cal.4th at pp. 65-67, 72, 76 [an employee who challenges a dismissal on discrimination grounds through administrative civil service remedies and fails to have an adverse finding set aside through judicial review procedures is bound by the adverse finding in a later civil action raising discrimination claims under the FEHA]; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1090-1091 ["We . . . giv[e] collateral estoppel effect to appropriate administrative findings" by requiring employees challenging administrative findings "to do so in the appropriate forum, by filing a writ of administrative mandamus petition in superior court"; "employees who choose to utilize internal procedures are not given a second 'bite of the procedural apple' "].)

D. *Jones-Gentry's Arguments*

Jones-Gentry's arguments for reversal of the trial court's collateral estoppel ruling are not persuasive. One line of attack includes the related contentions that (1) the Board's order "identifies no . . . discrimination issue actually litigated and necessarily decided" that is "identical" to the issues in her FEHA action; (2) the scope of her challenge before the Board was limited to the propriety of her rejection while on probation; and (3) her FEHA causes of action are not barred by the Board's order because her wrongful termination is not a required element in any of those claims. This line of attack is not persuasive because, as explained above, the dispositive consideration here is that Jones-Gentry had the *opportunity and incentive* to raise all of her FEHA claims before the Board to prove her claim that her rejection during probation was done in bad faith.

Jones-Gentry also contends she was not required to "raise discrimination" in her challenge before the Board. But regardless of whether Jones-Gentry was required, as a statutory matter, to raise discrimination to prove that CDCR acted in "bad faith" when it

10

rejected her during probation, she *did* raise it. Having done so, she had the obligation "to take full advantage of the opportunity to fully establish" that claim (*Murray, supra*, 50 Cal.4th at p. 873) by presenting all of the interrelated facets of disability discrimination she allegedly experienced up to and including her rejection.[5]

Jones-Gentry next argues the Board's characterization of her challenge to her rejection (that CDCR "acted in bad faith because it did not investigate the discrimination complaints she raised") is a "factual assertion of what happened in the [Board]" proceeding that "is not subject to judicial notice."[6] There are multiple problems with this argument.

First, it is forfeited on appeal because the record reflects Jones-Gentry did not raise it in the trial court. She neither opposed respondents' request for judicial notice nor objected to the propriety of the trial court taking judicial notice of "factual assertions" in the Board's order. (See *J&A Mash & Barrel, LLC v. Superior Court* (2022) 74 Cal.App.5th 1, 25 [because a party did not oppose a request for judicial notice or otherwise object to the admissibility of a document, any threshold evidentiary challenges to the document were forfeited on appeal].)[7]

---

[5] Jones-Gentry cites *Interinsurance* for the proposition a former judgment is not collateral estoppel on issues that might have been litigated but actually were not. But as noted above, *Interinsurance* stands for the broader proposition that if a matter was "related" to the earlier subject matter and "relevant" to the issues " 'so that it *could have been raised*, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.' " (*Interinsurance Exchange of the Auto. Club v. Superior Court, supra*, 209 Cal.App.3d at p. 182, some italics omitted.)

[6] The trial court granted CDCR's unopposed request for judicial notice of the Board's order.

[7] The parties had the opportunity to brief forfeiture, a rule always implicated when an argument is raised for the first time on appeal. (See *People v. Alice* (2007) 41 Cal.4th 668, 679 ["The parties need only have been given an opportunity to brief the issue decided by the court, and the fact that a party does not address an issue, mode of analysis,

Second, we note Jones-Gentry does not challenge the propriety of the trial court taking judicial notice of the Board's order, per se. And as for the narrower issue of "factual assertions" in the Board's order that she seeks to challenge now, we reject that argument on the merits because the dispositive question is not whether the Board's characterizations of her arguments were accurate, but whether those characterizations are conclusive for purposes of her later FEHA action. They *are* indeed conclusive because Jones-Gentry did not seek judicial review of the Board's order in a mandate action. (See *Johnson, supra*, 24 Cal.4th at pp. 69-70.) The alternative, an inability to consider a first tribunal's characterizations of a party's arguments and theories, would hinder the second tribunal's ability to attain a full understanding of the issues that were and could have been raised in the prior proceeding. Such a scenario would present an impractical barrier to the accomplishment of the purposes of the doctrine of collateral estoppel: preserving the integrity of the judicial system, promoting judicial economy, and protecting litigants from harassment by vexatious litigation. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829.)

Accordingly, the trial court properly granted respondents' motion for judgment on the pleadings.[8]

## II

### *The Claims Against Jones-Gentry's Supervisors*

Jones-Gentry argues collateral estoppel principles cannot bar her harassment claim against her supervisors because "they are not in privity with" CDCR. Respondents contend California law "allows the defensive use of issue preclusion by a party who was

___

or authority that is raised or fairly included within the issues raised does not implicate the protections of section 68081"].)

[8] We deny as unnecessary CDCR's request that we take judicial notice of the Board's administrative records related to Jones-Gentry's challenge of her rejection during probation.

a stranger to the first action." Jones-Gentry offers no response in her reply brief to respondents' argument. We agree with respondents. (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824-825 ["issue preclusion can be raised by one who was not a party or privy in the first suit," because " '[o]nly the party *against whom* the doctrine is invoked must be bound by the prior proceeding' "].)

Accordingly, the trial court properly dismissed Jones-Gentry's harassment claims against her supervisors. This conclusion makes it unnecessary for us to consider the trial court's other ground for dismissing these claims.

III

*Application of Collateral Estoppel Principles and Public Policy*

Jones-Gentry argues application of collateral estoppel principles here "would be inequitable and contrary to public policy," because (1) she was not represented by counsel in her challenge before the Board, (2) she "was not afforded an opportunity to conduct meaningful discovery in that proceeding," (3) and the written argument that she filed with the Board "discloses she was completely out of her depth" and at a "gross disadvantage." We are not persuaded.

Collateral estoppel "preserve[s] the integrity of the judicial system, promote[s] judicial economy, and protect[s] litigants from harassment by vexatious litigation." But it " ' "is not an inflexible, universally applicable principle; policy considerations may limit its use where the . . . underpinnings of the doctrine are outweighed by other factors." ' " (*Vandenberg v. Superior Court*, *supra*, 21 Cal.4th at p. 829.) In analyzing this policy question, "courts consider the judicial nature of the prior forum, i.e., its legal formality, the scope of its jurisdiction, and its procedural safeguards, *particularly including the opportunity for judicial review of adverse rulings*." (*Ibid.*, italics added.)

Jones-Gentry concedes she failed to seek judicial review of the Board's ruling in a mandate action, but indicates she may have been unaware of that opportunity because she was not represented by counsel. She offers no California authority for the proposition

13

that her self-representation before the Board, by itself, is a relevant consideration to the question whether public policy forbids application of preclusion principles here. She cites a line of Ninth Circuit cases for support. But those cases, the earliest of which is *Thompson v. Schweiker* (9th Cir. 1982) 665 F.2d 936, concern judicial review of denials of applications for disability benefits under the federal Social Security Act after administrative hearings that, while adjudicatory, were *nonadversarial* (see *id.* at p. 941 [citing *Gold v. Secretary of HEW* (2d Cir. 1972) 463 F.2d 38, 43 for the proposition that "[w]hen a claimant is not represented by counsel, the ALJ has a duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' "]; *Gold v. Secretary of HEW,* at p. 43 ["Hearings under the Social Security Act are *non-adversary*, [citation]; 'rights and privileges are in issue and [when] the guiding hand of counsel is not present to advocate their existence, a *duty devolves on the hearing examiner* to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts surrounding the alleged right or privilege' " (italics added)]; *Moats v. Comm'r of Soc. Sec.* (6th Cir. 2022) 42 F.4th 558, 560 ["[d]isability benefits hearings before the Social Security Administration . . . are considered adjudicative, not adversarial, in nature," because while a claimant has the right to designate a person to represent them during the hearing, *the Social Security Administration "has no representative* before the ALJ" (italics added)]). The nonadversarial context is a key factor in the line of federal cases Jones-Gentry invokes.

By contrast, Jones-Gentry's Board proceeding clearly *was* adversarial. Jones-Gentry challenged her rejection during probation on two distinct grounds, and respondents argued she failed to meet her burden of proof. California case law makes clear that the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985; *id.* at p. 985 ["A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a" litigation

14

"quagmire . . . and would be unfair to the other parties to litigation"].)  Thus, Jones-Gentry's invocation of federal case law in support of her position is not persuasive.

Also unpersuasive are the contentions she was not afforded an opportunity to conduct meaningful discovery and that consideration of the brief she filed with the Board shows she was "out of her depth."  Those contentions fail to persuade because they are not supported by adequate citations to the record.  (See *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894.)

For the notion she was not afforded an opportunity to conduct meaningful discovery, Jones-Gentry cites two pages from her opposition to respondents' motion for judgment on the pleadings.  Those two pages reflect argument, not evidence.  And the argument contained therein does not concern the question of discovery before the Board.

For the notion she was "out of her depth" at the hearing before the ALJ, Jones-Gentry asks us to consider the brief she filed in connection with that hearing.  But she provides no citation to the appellate record where we can find that document.

Accordingly, Jones-Gentry has not persuaded us that application of collateral estoppel and judicial exhaustion principles here would be contrary to public policy. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [we presume a ruling is correct unless an appellant carries the burden of showing otherwise].)

IV

*Leave to Amend*

In the case of a motion for judgment on the pleadings, leave to amend should be granted "if there is any reasonable possibility that the plaintiff can state a good cause of action."  (*Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852.) The burden of proving such reasonable possibility is "squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Here, Jones-Gentry contends she "can amend to allege facts that weigh against the application of collateral estoppel" in this case on public policy grounds.  She presents two

15

categories of proposed factual amendments in this regard:  (1) she was not represented by counsel before the Board and was unaware that she could challenge the Board's ruling in a mandate action and (2) she "had no meaningful ability to conduct discovery" in connection with her challenge at the Board, because "defendants stonewalled her when she tried to conduct discovery" and "she was not represented by counsel" and therefore "ignoran[t] how to obtain discovery."

These contentions do not demonstrate a reasonable probability of a showing that application of collateral estoppel and judicial exhaustion principles in this case would be against public policy.  This is so because, as discussed above, Jones-Gentry's argument that her pro. per. status is a material factor in considering the public policy question is not persuasive.  Jones-Gentry's contention she was unable to conduct discovery also relies on this unpersuasive proposition: she argues she did not know how to obtain discovery *because* she was not represented by counsel.  Accordingly, we conclude the trial court did not abuse its discretion in denying leave to amend.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                                      /s/
                                        BOULWARE EURIE, J.



We concur:


       /s/
MAURO, Acting P. J.



       /s/
MESIWALA, J.

16