715 F.2d 282
 2 Soc.Sec.Rep.Ser. 464
 ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION OF the
SUPREME COURT OF ILLINOIS, and Carl H. Rolewick,
Administrator, on their own behalf and as trustees on behalf
of all employees of the Commission past and present,
Plaintiffs-Appellants,
v.
Richard S. SCHWEIKER, Secretary of Health and Human
Services, Philip J. DiBenedetto, Acting Regional
Commissioner for Social Security, and
Donald Regan, Secretary of
Treasury,
Defendants-
Appellees.
 No. 83-1132.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 7, 1983.
Decided Aug. 11, 1983.
As Amended Aug. 12, 1983.
 
 Richard J. Prendergast, Ltd., Chicago, Ill., for plaintiffs-appellants.
 Edward J. Moran, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendants-appellees.
 Before ESCHBACH and POSNER, Circuit Judges, and DUMBAULD, Senior District Judge.*
 POSNER, Circuit Judge.
 
 
 1
 This appeal raises questions concerning the jurisdiction of the federal courts to review determinations of social security coverage in advance of any claim for benefits.
 
 
 2
 The Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, and the Disciplinary Commission's Administrator, brought this suit in federal district court, on their own behalf and that of the Commission's employees past and present, against the Secretary of Health and Human Services, the Acting Regional Commissioner of the Social Security Administration, and the Secretary of the Treasury, seeking a declaration that the Disciplinary Commission's employees are covered by social security, or failing that a refund of the money the Disciplinary Commission and its employees have paid in social security taxes. Federal jurisdiction was based on 28 U.S.C. §§ 1331 (federal question) and 1361 (mandamus), and on section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (review of final decision of Secretary of Health and Human Services). The district court held that none of these provisions conferred jurisdiction, and dismissed the complaint. Attorney Registration & Disciplinary Comm'n v. Harris, 545 F.Supp. 1098 (N.D.Ill.1982).
 
 
 3
 The Disciplinary Commission's efforts to establish its employees' eligibility for social security benefits have been protracted. In 1973 the Illinois Supreme Court adopted a rule creating the Commission to assist it in supervising the Illinois bar by investigating complaints of unethical behavior and prosecuting them before the court. Although the court appoints and can remove the Commission's members and Administrator, it is the Commission rather than the court, according to the allegations of the complaint (which on this appeal we must take as true), that hires and fires the other employees, supervises them, and sets their salaries and fringe benefits. Shortly after its formation the Commission applied to the Internal Revenue Service for a ruling on whether its employees were covered by social security (technically, by Title II of the Social Security Act, the title that creates entitlements to old age, survivors, and disability insurance benefits--entitlements to "social security benefits" in the popular sense of the term). The Service ruled that they were not covered--that the Commission was a state agency and hence it and its employees were exempt from the Federal Insurance Contributions Act, see 26 U.S.C. §§ 3101(a), 3111(a), 3121(b)(7), and its employees were excluded from the coverage of Title II of the Social Security Act, see 42 U.S.C. § 410(a)(7). Both statutes exclude employees "of a State, or any political subdivision thereof, or any instrumentality of any one or more of the foregoing which is wholly owned thereby...."
 
 
 4
 The Service suggested, however, that the Commission might be able to obtain coverage for its employees under section 218 of the Social Security Act, 42 U.S.C. § 418, which authorizes states, by agreement with the Social Security Administration, to bring its employees, and employees of its instrumentalities, see 42 U.S.C. §§ 418(a), (b)(2), under social security. Illinois has such an agreement. See Ill.Rev.Stat.1981, ch. 108 1/2, p 21-119. Pursuant to this suggestion the Disciplinary Commission requested an opinion from the Attorney General of Illinois on whether its employees qualified under the state's section 218 agreement. The Attorney General ruled that they did not because the Commission was an instrumentality not of the state but of the Illinois Supreme Court. Armed with this opinion the Commission asked the Internal Revenue Service to reverse its ruling that the Commission was excluded from social security coverage because it was a state instrumentality. The Service refused on the ground that an instrumentality of the judicial branch of the state is an instrumentality of the state.
 
 
 5
 The Disciplinary Commission then applied to the Service for [income-]tax-exempt organization status under 26 U.S.C. § 501(c)(6), a section that applies to nonprofit organizations such as clubs. "Based on information supplied," the Service determined that the Commission was exempt from federal income tax, but was liable for social security tax "unless specifically excepted." This ruling was made in 1976, retroactive to 1973; so the Commission paid back social security taxes for the previous three years, and since 1976 has paid the employer's social security tax and withheld the employees' tax and paid that over to the Treasury as well. It has paid a total of $180,000 in social security employer's tax and the same amount in employees' tax and it has represented to its employees that they have social security coverage, and they, in reliance on that representation, have foregone alternative retirement and disability plans. No employee of the Commission has yet made a claim for benefits, but some are near retirement and one may soon seek disability benefits.
 
 
 6
 In 1980, however, the Social Security Administration wrote the Disciplinary Commission that its employees were not covered by social security after all, because the Commission was an instrumentality of the State of Illinois and its employees therefore could be covered only under the state's section 218 agreement. Representatives of the Commission met with officials of the Social Security Administration but the Administration refused to change its view. On July 10, 1980, the Acting Regional Commissioner of Social Security sent the Disciplinary Commission a letter so stating, adding that "the Commission has no formal appeal rights under the Social Security Act to th[is] determination" and that the Internal Revenue Service had been told to stop processing Commission wage reports and to cancel those that had been submitted since January 1, 1976 (correction of earlier social security wage reports was time-barred under 42 U.S.C. § 405(c)(5)). The defendants have been stayed from changing the social security status of the Disciplinary Commission and its employees until this case is decided.
 
 
 7
 The Disciplinary Commission has a big stake in getting judicial review of the Social Security Administration's ruling excluding the Commission's employees from social security coverage, but the government is unable to suggest any practical procedure by which the Commission might do this. It can only suggest that the State of Illinois bring suit under section 218(t)(1) of the Social Security Act, 42 U.S.C. § 418(t)(1), for a declaration that the Commission's employees are covered under the state's section 218 agreement--something the state is unlikely to do in view of the Attorney General's ruling that they are not covered under the agreement. Although the path to judicial review of social security determinations is strewn with thorns, it is not quite the impassable thicket that the government makes it out to be.
 
 
 8
 Section 205(h) of the Social Security Act, 42 U.S.C. § 405(h), provides: "No action against the United States, the Secretary [of Health and Human Services], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter [i.e., Title II]." Although the background and legislative history suggest that the words "any claim arising under this subchapter" were intended to refer to a garden-variety claim for benefits, see Ellis v. Blum, 643 F.2d 68, 74 (2d Cir.1981) (Friendly, J.), leaving a wide field for actions under section 1331, the words were read broadly in Weinberger v. Salfi, 422 U.S. 749, 757, 95 S.Ct. 2457, 2462-2463, 45 L.Ed.2d 522 (1975), which involved a challenge to the constitutionality of one of the benefits provisions of the Social Security Act. Salfi can be distinguished because the plaintiffs there were seeking immediate payment of social security benefits, see id. at 761, 95 S.Ct. at 2464-2465, and the plaintiffs in this case are not. But we cannot disregard the Supreme Court's admonition to read section 205(h) as written--that is, broadly. See 422 U.S. at 757, 95 S.Ct. at 2462-2463.
 
 
 9
 The only possibility for upholding jurisdiction of this suit under section 1331, therefore, would be that the plaintiffs' claim did not arise under Title II. But it does. Although the plaintiffs are not seeking an immediate payment of old age, survivors, or disability benefits, they are seeking to establish rights to future payments, albeit payments to the Disciplinary Commission's employees rather than to the plaintiffs themselves (as we shall see, the Administrator is suing in a representative capacity rather than as an employee). The claim of a right to future Title II benefits is a claim under Title II, it can have no other provenance. A contrary conclusion would merely invite claimants to evade the limitations on suit in section 205(h) by bringing declaratory judgment actions before their claims actually accrued. Cases allowing suits to be brought under section 1331 challenging the procedures used by the Social Security Administration--such as Ringer v. Schweiker, 697 F.2d 1291, 1293-94 (9th Cir.1982), and the cases cited in Pushkin v. Califano, 600 F.2d 486, 490-91 n. 9 (5th Cir.1979), including Schwartzberg v. Califano, 453 F.Supp. 1042, 1045 (S.D.N.Y.1978)--are thus distinguishable, as well as contrary to this circuit's decision in Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc., 570 F.2d 660, 667 (7th Cir.1977). There is (it can be argued) no evasion of section 205(h) when a plaintiff is trying to clear a procedural roadblock preparatory to establishing his substantive entitlement in a proceeding under section 205(g). But the plaintiffs here are seeking to establish substantive entitlements, though to future rather than present benefits.
 
 
 10
 If the plaintiffs' alternative claim, for the return of the money that the Disciplinary Commission and its employees have paid in social security taxes, also arose under Title II, it could not be brought even under 28 U.S.C. § 1346(a)(1), the statute conferring on the federal district courts jurisdiction over suits for refunds of federal taxes; section 205(h) expressly bars the use of section 1346 to bring such claims. Yet suits for refunds of social security taxes are routinely brought under section 1346(a)(1), as we shall see; the idea apparently is that they are not suits to obtain social security benefits, present or future, but very nearly the opposite. However, the plaintiffs in this case cannot be allowed to get around section 205(h) by joining with a claim for (future) benefits over which a federal district court has no jurisdiction under section 1331 a pendent claim--contingent on the failure of their main claim--over which the district court has jurisdiction under another statute. The doctrine of pendent jurisdiction allows a court that has jurisdiction of the plaintiff's main claim to assume jurisdiction over a closely related claim that lacks an independent jurisdictional basis, in the interest of judicial economy. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). But this is not such a case. It is not that the Disciplinary Commission wants its tax money and incidentally wants some other relief for which there is no independent jurisdictional basis in the district court. The relief that the district court has no power to provide, at least under section 1331, is the main thing the Commission wants, and the tax refund is the fallback relief that it seeks if its main claim fails. The inversion of pendent jurisdiction that the Disciplinary Commission is seeking would flout Congress's desire in section 205(h) of the Social Security Act to limit the district courts' jurisdiction under both sections 1331 and 1346. Although the issue has not arisen before, we find support for our resolution of it in Weintraub v. Fitzgerald Bros. Brewing Co., 40 F.Supp. 473, 475 (S.D.N.Y.1941) (Rifkind, J.), and Fed.Proc.L.Ed. § 62:86, at p. 84 (1981).
 
 
 11
 But maybe jurisdiction can as in Salfi be based on section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which provides that "any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days .... Such action shall be brought in the district court ...." This suit was brought in the right court within sixty days. But as no past or future employees of the Disciplinary Commission, other than the Administrator, were parties to the proceeding before the Social Security Administration, the suit cannot be maintained under section 205(g) on their behalf; they cannot satisfy the "hearing to which he was a party" requirement of the statute. Weinberger v. Salfi, supra, 422 U.S. at 764, 95 S.Ct. at 2466. Although Califano v. Yamasaki, 442 U.S. 682, 700, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979), allowed a class action under section 205(g), it limited the class to individuals who had filed claims with the Social Security Administration, see 442 U.S. at 704, 99 S.Ct. at 2559, and none of the Disciplinary Commission's employees has.
 
 
 12
 Although the Disciplinary Commission's Administrator purports to be suing in his own capacity as well as suing as a representative of the Commission's employees, by "own behalf" he evidently does not mean as an employee seeking a determination of his social security coverage. His appearances before the Social Security Administration were solely in his capacity as the Commission's Administrator. Indeed, since he is appointed by the Illinois Supreme Court rather than by the Disciplinary Commission, it is unclear that his status is the same as that of the other employees. It obviously is harder for him to claim that he is not an employee of state government; yet he does not even allude to this obstacle. We conclude that he is suing either as the Commission's alter ego or as a representative of its other employees. But he has no standing as a representative of persons who themselves have no standing, and as the Commission's alter ego his presence in the suit adds nothing to that of the Commission itself.
 
 
 13
 So the question becomes whether the Disciplinary Commission can maintain this suit on its own behalf under section 205(g). The first hurdle the Disciplinary Commission must clear is to establish that the letter of July 10, 1980, from the Acting Regional Commissioner of Social Security was a "final decision of the Secretary after a hearing to which [the applicant for judicial review] was a party ...." The term "final decision" is not defined in the Social Security Act. The regulations distinguish between administrative actions that are "initial determinations" subject to (eventual) judicial review, and other actions, which are not subject to judicial review. See 20 C.F.R. §§ 404.902, .903. Various examples of each type are given but they are illustrative only and the type of determination sought by the Disciplinary Commission is in neither list of illustrations. An "initial determination" is subject to a series of reviews within the Department of Health and Human Services, beginning with a reconsideration and continuing with a hearing before an administrative law judge and a review of his determination (if adverse to the claimant) by the Appeals Council, see 20 C.F.R. §§ 404.900(a)(2)-(4), followed by judicial review in the district court under section 205(g). See 20 C.F.R. § 404.900(a)(5). If the letter of July 10 had been the decision on reconsideration of an initial determination, the Disciplinary Commission would have had to go through the remaining administrative review steps before it could get a final decision within the meaning of section 205(g) and could proceed in court. But the Acting Regional Commissioner took the position that his decision on reconsideration was administratively final, and the government has not suggested that he was mistaken. Therefore, if the Disciplinary Commission had asked for a hearing or taken any other step to get the Acting Regional Commissioner's decision reviewed within the Department, it would have been turned down. Since the Commission had gone as far as it could go within the agency when it received the letter of July 10, that letter was a final decision within the meaning of the statute; and the informal hearing that preceded the Acting Regional Commissioner's action was all the hearing that the statute required. See Weinberger v. Salfi, supra, 422 U.S. at 766-67, 95 S.Ct. at 2467-2468; cf. Denberg v. Railroad Retirement Bd., 696 F.2d 1193, 1196 (7th Cir.1983).
 
 
 14
 The hard question is whether the Commission is "an individual" within the meaning of section 405(g). In Lowther v. Montgomery County, 561 F.2d 1120, 1122 (4th Cir.1977), a group of policemen had brought suit to obtain a determination that they were not subject to the social security laws, and the county--their employer--tried to join the suit on their side. The court held that the county lacked standing. However, Lowther is distinguishable, so we need not worry whether it is consistent with the Supreme Court's Yamasaki decision, which postdates Lowther, and which in allowing a class action to be maintained under 205(g) expressly declined to read "individual" literally. See 442 U.S. at 700, 99 S.Ct. at 2557. In Lowther, the county appears to have been suing in a representative capacity on behalf of a group of its employees who wanted to get out of the social security program; and representative suits seeking immediate benefits or entitlements thereto are not allowed under section 205(g) unless the individuals being represented have filed their own claims, which none had in Lowther.
 
 
 15
 But the Disciplinary Commission is suing in its own behalf, as well as in a representative role that we may disregard. It has paid $180,000 of its own money into the social security fund. It has a vital interest in knowing whether it has gotten anything for this expenditure. The Social Security Administration has determined that it has not, and implicitly that it can get the money refunded. But the Disciplinary Commission does not want a refund. It wants its employees to have social security coverage and it wants at least to know whether they do or not, as this will affect the representations it makes to them, the salaries it pays them, and the provision for retirement and disability that it makes in the package of fringe benefits that it supplies them.
 
 
 16
 A company that paid premiums year in and year out for group life insurance for its employees and then was told by the insurance company that the policy had been cancelled would have standing to sue for a declaration that it was still in force. Cf. Keene Corp. v. Insurance Co. of North America, 667 F.2d 1034, 1039-40 (D.C.Cir.1981). That is the kind of interest the Disciplinary Commission has asserted in this suit. Much more tenuous interests have been held to confer standing to challenge administrative action. See discussion in Community Nutrition Inst. v. Block, 698 F.2d 1239, 1244-46 (D.C.Cir.1983). In these circumstances, the presumption of judicial reviewability of administrative action, see, e.g., Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); General Finance Corp. v. FTC, 700 F.2d 366, 371 (7th Cir.1983), argues strongly for deeming the Commission an "individual" within the meaning of section 205(g), entitled to obtain judicial review of an administratively final decision on coverage.
 
 
 17
 Although this result does some violence to the everyday meaning of "individual," the Supreme Court crossed that Rubicon in Salfi when it expanded the scope of section 205(h) beyond the garden-variety claims that the framers of the section apparently had in mind and in reference to which the word "individual" was aptly chosen, and in Yamasaki where it allowed a class action under 205(g). If the Court had interpreted section 205(h) narrowly, the Disciplinary Commission would not be able to bring this suit under section 205(g), but it could bring it under section 1331 of the Judicial Code. With section 205(h) read broadly, a literal reading of "individual" would leave the Commission with no possible avenue of judicial review except a mandamus action under 28 U.S.C. § 1361. Although there is a powerful argument that the mandamus statute remains available to social security claimants notwithstanding section 205(h), see, e.g., Ellis v. Blum, supra, 643 F.2d at 78-82; Soberal-Perez v. Schweiker, 549 F.Supp. 1164, 1167-70 (E.D.N.Y.1982), it is more in keeping with the Supreme Court's desire to channel judicial review of social security claims through section 205(g) to construe "individual" broadly than it would be to force claimants to use the general-purpose mandamus statute, especially since that statute might not be usable in a case such as this. A factual inquiry may be necessary before the plaintiffs' right to relief emerges, and it may therefore be hard to show that the defendant has "a clear duty to act." Ellis v. Blum, supra, 643 F.2d at 81 (emphasis added). Americana Healthcare Corp. v. Schweiker, 688 F.2d 1072, 1084 (7th Cir.1982), a recent decision of this circuit, defines the mandamus jurisdiction even more narrowly.
 
 
 18
 Finally, we do not think that Congress established an exclusive procedure for determining social security coverage in section 205(c)(2) of the Social Security Act, 42 U.S.C. § 405(c)(2), which requires the Secretary to maintain earnings records for all workers having coverage and on request to inform the worker of the amount of his wages (or self-employment income) shown on the records. It is true that if the worker thinks the record is inaccurate he can seek a correction, see 42 U.S.C. §§ 405(c)(4), (5), and if that is refused he can request reconsideration and after that is denied obtain a hearing before an administrative law judge with a right of appeal to the Appeals Council, see 42 U.S.C. § 405(c)(7); 20 C.F.R. §§ 404.907-.983, followed by judicial review under section 205(g). See 20 C.F.R. § 404.900(a)(5); Giacone v. Schweiker, 656 F.2d 1238, 1241 (7th Cir.1981). But nothing in the statute or the regulations suggests that section 205(c) was intended to be used for deciding questions of coverage, nor can we find a case under section 205(c) where such a question was addressed. Typical 205(c) cases in the courts are Hollman v. Department of Health & Human Services, 696 F.2d 13 (2d Cir.1982), and Burke v. Secretary of Health & Human Services, 680 F.2d 1128 (6th Cir.1982). However, we may assume without having to decide that 205(c) could be used for this purpose. If a worker were not covered, and he asked how much wage income was shown on his social security records, the agency's answer--"none"--might be the start of a section 205(c) review proceeding.
 
 
 19
 But it is hardly likely that Congress intended section 205(c) to be the only method of determining coverage in advance of a claim for benefits; the cases that have held that questions of social security coverage can be determined in suits for refunds under section 1346(a) of the Judicial Code are authority that it did not. See United States v. Lee, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982); Radio City Music Hall Corp. v. United States, 50 F.Supp. 329, 330 (S.D.N.Y.1942), aff'd, 135 F.2d 715 (2d Cir.1943); United States v. Plotkin, 239 F.Supp. 129, 132 (E.D.Wis.1965). The Disciplinary Commission has an interest independent of its employees in knowing whether it has gotten anything for the $180,000 it has contributed to the social security fund. That interest is sufficient to support its own action under 205(g) of the Social Security Act despite the possibility--no more than that--that its employees might be able one by one to obtain a determination of their coverage by proceeding under section 205(c). There is no question of the Disciplinary Commission's having bypassed the agency by taking the route it did. The Commission was required to and did exhaust its administrative remedies before bringing this suit.
 
 
 20
 The district court's judgment is reversed and the case remanded for a determination of the merits of the Disciplinary Commission's complaint.
 
 
 
 *
 Hon. Edward Dumbauld of the Western District of Pennsylvania, sitting by designation