**Rodney BURNETT, Plaintiff,**

v.

**Margaret HECKLER, Secretary, Department of Health and Human Services, Defendant.**

**No. 85–3023.**

United States District Court,
C.D. Illinois,
Springield Division.

Jan. 7, 1986.

Costello, Long, Young & Dvorak, Springfield, Ill., for plaintiff.

Gregory K. Harris, Asst. U.S. Atty., Springfield, Ill., for defendant.

## OPINION AND ORDER

MILLS, District Judge:

Social security disability claim.

Administrative *res adjudicata*.

Summary affirmance for DHHS.

Rodney Burnett brought this action against Margaret Heckler, Secretary of Health and Human Services (Secretary), seeking reversal of the Secretary's decision that plaintiff is not entitled to receive Social Security Disability Insurance Benefits between March 22, 1982, and November 15, 1983.[1] Plaintiff invokes 42 U.S.C. § 405(g) as the basis for subject matter jurisdiction over this case. The defendant has moved for summary affirmance of the Secretary's decision. While not stated as such, defendant's motion is essentially a motion to dismiss under Fed.R.Civ.P. 12(b)(1) for lack of

subject matter jurisdiction. Because resolution of this issue entails consideration of the procedural history of this case, a detailed factual summary is necessary.[2]

## FACTS AND PROCEDURAL HISTORY

Rodney Burnett, a thirty-eight (38) year old employee of the Firestone Tire and Rubber Co., collapsed at work on March 11, 1982. He did not return to work after this date. It was later determined that Mr. Burnett had suffered a grand mal seizure caused by a very large parsagital meningiomia (tumor) in the left side of his brain. (R. 371). According to Dr. Miller, one of Mr. Burnett's treating physicians, a meningiomia is a benign neoplasm which is treated by surgical excision. Occasionally, however, such tumors can reoccur after incomplete excision. (R. 420). This is what happened in Mr. Burnett's case. He was operated on in April of 1982, and the tumor was removed, but a residual tumor later began to grow back. By June of 1984, the new tumor had grown to a point where its effects on Mr. Burnett were more severe than the initial tumor. As a result of these brain tumors, Mr. Burnett had grand and petit mal seizures and Jacksonian seizures on a regular basis, probably three times a week.[3] These seizures became more fre-

[1.] By decision dated July 31, 1984, Mr. Burnett was found to be disabled beginning November 13, 1983, and is currently receiving disability benefits. His present appeal seeks retroactive benefits for the period March 22, 1982, to November 13, 1983.

[2.] This case was initially referred to U.S. Magistrate Charles H. Evans, who entered a recommendation to grant the Secretary's motion for summary affirmance on December 3, 1985. Plaintiff's objections have been considered by the Court and are hereby overruled. This opinion and order adopts the able recommendation of Magistrate Evans and its reasoning *in toto*.

[3.] GENERALIZED SEIZURES can be minor or major in their manifestations. Absence (petit mal) attacks are brief generalized seizures manifested by a 10- to 30-second loss of consciousness, with eye or muscle flutterings at a rate of 3/second, and with or without loss of muscle tone. The patient suddenly stops any activity in which he is engaged and resumes it after the attack. Petit mal seizures are genetically determined and occur predominantly in children:

they never begin after age 20. The attacks are likely to occur several or many times a day, often when the patient is sitting quietly. They are infrequent during exercise. Petit mal attacks rarely indicate gross brain damage, and many patients are highly intelligent.

TONIC–CLONIC (GRAND MAL) SEIZURES occasionally begin with a sinking or rising sensation in the epigastrium (the aura) followed by an outcry; the seizure continues with loss of consciousness; falling; and tonic, then clonic contractions of the muscles of the extremities, trunk, and head. Urinary and fecal incontinence may occur. The attack usually lasts 2 to 5 min. It may be preceded by a prodromel mood change, and may be followed by a postictal state, with deep sleep, headache, muscle soreness or, at times, focal motor or sensory phenomena. The attacks may appear at any age.

In JACKSONIAN SEIZURES, focal motor symptoms begin in one hand or foot and then "march" up the extremity, or spread similarly from a corner of the mouth. The dysfunction may remain localized or may spread to other

quent toward the end of 1983. The medication Mr. Burnett is required to take also has side effects which include somnolence (drowsiness), and ataxia (the inability to coordinate voluntary muscular movements) (R. 421).

On May 12, 1982, plaintiff filed an application for disability insurance benefits, contending thát he had been disabled since his collapse at work on March 22. The application was denied initially and upon reconsideration. At plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) Cosentino. In a decision dated May 18, 1983, ALJ Cosentino found that Mr. Burnett was not disabled within the meaning of the Act. This decision became the final decision of the Secretary when the Appeals Council affirmed the denial of plaintiff's application on July 1, 1983. Plaintiff did not appeal the Secretary's final decision to the federal district court.

More than one year later, on August 1, 1983, plaintiff filed a second application for disability insurance benefits. This second application asked for a re-opening of ALJ Cosentino's decision, and alternatively, for the establishment of a later disability date. In support of his request to re-open the initial claim, plaintiff introduced three items of evidence which he contends justified re-opening the case: (1) a notice by the Illinois Department of Rehabilitation Services stating that it was closing Mr. Burnett's case because he was not benefiting from rehabilitation and job placement services; (2) a report by Dr. Miller in which he opines that plaintiff could not work since his first seizure on March 22, 1982, and; (3) evidence that plaintiff continued to have seizures after the Secretary's initial decision.

Again his application was denied both initially and upon reconsideration. This time ALJ Lincoln heard plaintiff's case at a hearing held on July 11, 1984. On July 31, 1984, ALJ Lincoln denied plaintiff's request to re-open ALJ Cosentino's decision, but found, however, that plaintiff was disabled beginning November 13, 1983. In denying plaintiff's request to re-open the first decision, the ALJ held that:

"no new evidence material to the issues resolved in that decision (by ALJ Cosentino) has been submitted. Accordingly, that decision remains final and binding. The issue before the undersigned is thus limited to whether the claimant is entitled to benefits on the basis of disability beginning since May of last year (1983)." (R. 14).

As the Appeals Council affirmed ALJ Lincoln's decision, it stands as a final decision of the Secretary. Plaintiff now seeks review of ALJ Lincoln's determinations: (1) that ALJ Cosentino's decision should not be re-opened; and (2) that plaintiff's disability began on November 13, 1983 rather than in May of 1983. This Court shall consider each question in the order stated above.

I.

As previously mentioned, the initial basis for defendant's Motion For Summary Affirmance is that this Court does not have subject matter jurisdiction under § 405(g) to consider whether ALJ Lincoln should have re-opened the Secretary's first decision. Re-opening of a final decision *by the Secretary* is provided for in 20 C.F.R. § 404.987 *et. seq.* The regulation relevant to this case provides, in part, as follows:

A determination, revised determination, or decision may be re-opened—

(a) Within 12 months of the date of the notice of the initial determination, for any reason;

(b) Within 4 years of the date of the notice of the initial determination if we

parts of the brain, with consequent loss of consciousness and generalized convulsive movements.
PARTIAL SEIZURES WITH COMPLEX SYMPTOMS are characterized by a variety of patterns of onset. In most instances, the patient has a 1– to 2–min loss of contact with the surroundings. The starting patient may stagger, perform automatic purposeless movements, and utter unintelligible sounds. He does not understand what is said and may resist aid. Mental confusion continues for another 1 or 2 min after the attack is apparently over.
*See Merck Manual,* 14th ed. p. 1312–1314.

find good cause, as defined in § 404.989, to re-open the case; ... 20 C.F.R. § 404.988.

In addition, 20 C.F.R. § 404.989 states that:

(a) We will find that there is good cause to re-open a determination or decision if–

(1) New and material evidence is furnished; ...

As is apparent from ALJ Lincoln's opinion, the decision to not re-open the earlier case was coupled with a decision that administrative *res judicata* was applicable, thus barring a subsequent claim on the same cause of action. This is consistent with Judge Shadur's description of the Secretary's determination not to re-open a decision and her determination to apply the doctrine of *res judicata* to that decision as "companion decision[s]". *See Tolbert v. Secretary*, 537 F.Supp. 631, 632 (N.D.Ill. 1982). Such a determination also comports with the Secretary's regulations which state that a decision to apply *res judicata* *must* be preceded by a determination that no basis exists for re-opening the earlier decision. 20 C.F.R. § 404.987(b). The reason for this is that without a determination that no basis for re-opening exists, the Secretary's decision is not "final" for *res judicata* purposes, 20 C.F.R. § 404.957(c); *See Hennings v. Heckler*, 601 F.Supp. 919, 925–26 (N.D.Ill.1985).

The fundamental issue, therefore, is the recurring question of whether § 405(g) grants a federal district court the power to review the Secretary's application of *res judicata* to deny a social security claim, and her "companion decision" to not re-open the claim.

Section 405(g) provides, in part, as follows:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action *commenced within sixty days* after the mailing to him of notice of such decision or within such further time as the Secretary may allow. (emphasis added)

Further, 42 U.S.C. § 405(h) makes it clear that the Secretary's decisions are not reviewable except as provided in § 405(g). *Weinberger v. Salfi*, 422 U.S. 749, 756–58, 95 S.Ct. 2457, 2462–63, 45 L.Ed.2d 522 (1975). *Cf. Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 2021–22, 80 L.Ed.2d 622 (1984) (§ 405(h) requires that § 405(g) be the sole avenue for review of Medicare Act claims).

The leading case in this area is *McGowen v. Harris*, 666 F.2d 60 (4th Cir.1981). *See e.g. Tolbert v. Secretary*, 537 F.Supp. at 633 (citing *McGowen* as controlling). In *McGowen*, the Fourth Circuit held that the combined effect of § 405(g) and (h) is to establish a power in the Secretary to deny any social security claim on the basis that it has earlier been denied on the merits by a final administrative decision. Further, assuming that the same claim is involved, and unless a constitutional objection to applying *res judicata* is raised in the district court, the district court is without jurisdiction under § 405(g) to engage in judicial review either of a decision by the Secretary not to re-open the claim, *Califano v. Sanders*, 430 U.S. 99, 107–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977); *Cf. Watters v. Harris*, 656 F.2d 234, 238 (7th Cir.1980) (Appeals Council refusal to consider an untimely request for review here not reviewable by the district court), or to apply administrative *res judicata* as a bar to it. *McGowen*, 666 F.2d at 65; *Carter v. Heckler*, 712 F.2d 137, 142 (5th Cir.1983); *Holloway v. Schweiker*, 724 F.2d 1102 (4th Cir. 1984).

There are two instances, however, in which jurisdiction to engage in judicial review exists under § 405(g) despite these rules. The first is where the Court determines that *res judicata* has been applied in bar of a subsequent claim which, properly assessed, is not "the same" claim for *res judicata* purposes. *McGowen*, 666 F.2d at 65; *Hennings v. Heckler*, 601 F.Supp. 919 (N.D.Ill.1985); *Tolbert*, 537 F.Supp. at 633. In such a situation, the subsequent claim is necessarily a different claim whose merits have never been addressed administratively. Therefore, a court will retain the "jur-

isdiction to determine its own jurisdiction" by deciding whether *res judicata* has been properly applied. *See Texas & Pacific Ry. v. Gulf, Colorado & Santa Fe Railway*, 270 U.S. 266, 274, 46 S.Ct. 263, 265, 70 L.Ed. 578 (1927) (Brandeis, J.). Only if the court determines that jurisdiction exists because the claims were in fact different, may it then judicially review the Secretary's final decision denying the claim. *McGowen*, 666 F.2d at 66.

A second instance where judicial review is possible is where the subsequent claim, though the same claim for *res judicata* purposes, has nonetheless been re-opened as a matter of administrative discretion under 20 C.F.R. § 404.989. *See e.g., Taylor for Peck v. Heckler*, 738 F.2d 1112 (10th Cir.1984). In that event a final decision of the Secretary denying the claim is also subject to judicial review to the extent of the re-opening, without regard to the expressed basis for the Secretary's denial. *McGowen*, 666 F.2d at 65–66 (citing *Farley v. Califano*, 599 F.2d 606, 608 & n. 4 (4th Cir.1979)). Thus, in the case *sub judice*, if we find that the original claim and the subsequent claim are not the "same" claims, or if we find that the Secretary has actually or constructively re-opened the original claim, then this court has full jurisdiction under § 405(g) to review the Secretary's decision denying the subsequent claim.

■ Applying these principles, it is this Court's finding that § 405(g) does not confer district court jurisdiction over this case. The first exception is inapplicable here because the record clearly indicates that Mr. Burnett has advanced one claim only: a claim of entitlement to disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 402(d)(1), 416(e). The unitary nature of the claim is not affected by the fact that following denial on the merits of the claim as initially presented, plaintiff presented "new and material" evidence tending to support plaintiff's claim of disability as of March 22, 1982. *Cf. McGowen*, 666 F.2d at 67; *Hennings*, 601 F.Supp. at 923; *Brown v. Felsen*, 442 U.S. 127, 101,

99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The claim itself is still regarded as "the same" claim for *res judicata* purposes.

The second exception also does not apply since the record shows that the Secretary did not re-open plaintiff's initial case and reconsider the merits of that decision. In fact, ALJ Lincoln expressly pointed out that the new evidence presented did not justify reconsideration of plaintiff's initial case. It is clear that ALJ Lincoln considered the new evidence only for the threshold purpose of determining whether such evidence justified re-opening plaintiff's initial case. Thus, the mere fact that the ALJ considered the new evidence for this narrow purpose cannot be interpreted to mean that plaintiff's case was re-opened by the Secretary. As explained in *McGowen*:

Of necessity when a social security claimant presents any claim that is arguably the same one earlier denied on the merits, the Secretary must in fairness look far enough into the proffered factual and legal support to determine whether it is the same claim, and if so, whether it should nevertheless be reopened as a discretionary matter. That the evidence offered is "new and material" may have significance on both points. If it is sufficiently "new" it may reveal the existence of a different claim, hence the inapplicability of res judicata. Or, though "new and material" it may nevertheless be revealed as going only to establish the same claim earlier denied, so that res judicata is legally available to bar its consideration on the merits. Finally, even if merely probative of the same claim, it may be sufficiently "new and material" that, considered with other factors, it justifies reopening the claim as a discretionary matter. *See* 20 C.F.R. § 404.989(a)(1).

666 F.2d at 67.

The record in this case reveals that ALJ Lincoln, in considering plaintiff's new evidence, was engaging in precisely this threshold inquiry. Therefore, plaintiff's case cannot be viewed as having been re-

opened by the Secretary. Because plaintiff also presented the "same" claim to the ALJ for *res judicata* purposes, this court is without subject matter jurisdiction under § 405(g) to review the merits of plaintiff's disability claim prior to July 1, 1983.

## II.

This holding, however, does not necessarily end the inquiry since it should also be determined whether a statutory provision other than § 405(g) confers jurisdiction over this case. *See Hennings v. Heckler,* 601 F.Supp. at 923 (and cases cited therein). The only other possible source for jurisdiction is the federal mandamus statute, 28 U.S.C. § 1361, which provides that:

> The district courts shall have original jurisidiction of any action in the nature of mandamus *to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.* (emphasis added)

A recurring question has been whether § 405(h) of the Act precludes a court's exercise of jurisdiction under § 1361.

Section 405(h) provides as follows:

> The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

Neither the Supreme Court, *see Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984), nor this Circuit, *see Attorney Registration and Disciplinary Commission of Supreme Court of Illinois v. Schweiker,* 715 F.2d 282, 290 (7th Cir. 1983); *Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072, 1087 (7th Cir. 1982); *Watters v. Harris,* 656 F.2d at 241 n. 12, have chosen to consider the issue.

However, those courts that have done so have unanimously held that under circumstances where the writ of mandamus properly would issue, § 1361 provides jurisdiction to review otherwise unreviewable procedural issues not related to the merits of a claim for benefits. *See Dietsch v. Schweiker,* 700 F.2d 865, 868 (2d Cir.1983); *Lopez v. Heckler,* 725 F.2d 1489, 1507–08 (9th Cir.1984); *Belles v. Schweiker,* 720 F.2d 509, 511–12 (8th Cir.1983); *Kuehner v. Schweiker,* 717 F.2d 813, 819 (3d Cir. 1983); *Ellis v. Blum,* 643 F.2d 68, 78–82 (2d Cir.1981); *Hennings v. Heckler,* 601 F.Supp. 919, 924 (N.D.Ill.1985); *Sullivan v. Heckler,* 602 F.Supp. 85, 87 n. 5 (D.Md. 1985); *Silvas v. Heckler,* 578 F.Supp. 1401, 1403 & n. 2 (W.D.Penn.1984); *Sinatra v. Heckler,* 566 F.Supp. 1354, 1358 (E.D.N.Y. 1983). Moreover, Judge Posner in the *Attorney Registration* case has noted that "although it is more in keeping with the Supreme Court's desire to channel judicial review of social security claims through § 405(g) there is a powerful argument that the mandamus statute remains available to social security claimants notwithstanding [§ 405(h)]." 715 F.2d at 290. In light of the overwhelming authority supporting the rule and the sound reasoning behind the decisions cited above, this court will follow the rule that under appropriate circumstances, mandamus jurisdiction under § 1361 is available in social security cases.

The issue thus presented is under what circumstances a court may exercise mandamus jurisdiction, and whether those circumstances exist in the case at bar. In this circuit, mandamus is viewed as an extraordinary procedure that is available only where the following three elements are present: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available. *Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072, 1084 (7th Cir.1982). *See also Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir.1972); *Hennings v. Heckler,* 601 F.Supp. at 925. Regarding the first of

these elements, it is also established that the mandamus remedy is only available under exceptional circumstances of clear illegality. "When the performance of official duty calls for a construction of governing law, the [federal] officer's interpretation will not be disturbed by a writ of mandamus unless it is clearly wrong and his official action is arbitrary and capricious." *Americana Healthcare Corp. v. Schweiker*, 688 F.2d at 1084 (citing *Association of American Medical Colleges v. Califano*, 569 F.2d 101, 110 n. 80 (D.C.Cir. 1977)). In addition to these three requirements, plaintiff's challenge must be procedural in nature, and not related to the merits of a claim for benefits. *See e.g., Dietsch v. Schweiker*, 700 F.2d at 868. The majority of social security cases that have applied the mandamus statute have involved a lawsuit to compel the Secretary to take some action on an application alleged to have been timely filed, but which the Secretary has dismissed as untimely. In such a situation, courts have held that § 1361 gives the court jurisdiction to correct an alleged procedural error that foreclosed administrative consideration of the claim. *See e.g., Sinatra v. Heckler*, 566 F.Supp at 1358. For instance, in *Dietsch v. Schweiker*, the plaintiff sought to compel the Appeals Council to perform its duty to review an ALJ's decision upon timely request by the plaintiff. The only issue was whether the request had in fact been timely filed. Because the dispute was procedural and unrelated to the merits of plaintiff's claim for benefits, the Court held that § 1361 gave it jurisdiction over the matter.

■ In this case, plaintiff argues that the Secretary should have re-opened his initial claim for benefits based on three pieces of additional evidence submitted to ALJ Lincoln. However, so long as the ALJ *considered* the new evidence, as he is required to do under the regulations, his decision to not re-open the case for good cause involves the merits of plaintiff's claim for benefits and is thus unreviewable under mandamus jurisdiction. On the other hand, to the extent plaintiff alleges that the ALJ did not even consider whether the new evidence constitutes "good cause" to re-open the case, plaintiff states a claim for relief under the mandamus statute. In that situation, plaintiff would be suing the Secretary to compel her to perform a peremptory duty that is clearly owed to the plaintiff. *See Hennings v. Heckler*, 601 F.Supp. 919, 925–26 (N.D.Ill.1985). Such a duty was found in the *Hennings* case in which Judge Plunkett, in a well-reasoned opinion, held that "the Secretary has 'a plainly defined and peremptory duty' *to consider* whether plaintiff has shown 'good cause' to re-open the Secretary's 1979 decision, and that the plaintiff has 'a clear right' to have the Secretary *consider* whether she has shown good cause." 601 F.Supp. at 926. Therefore, this court has mandamus jurisdiction to the extent Mr. Burnett alleges that the Secretary did not carry out her clear and plainly defined duty to plaintiff to consider his new evidence.

■ It is the finding of this Court, however, that it is unnecessary to remand this case to the Secretary to decide whether plaintiff has shown "good cause" to re-open her first decision, because in this case ALJ Lincoln did fulfill his duty to consider plaintiff's new evidence. Express statements contained in the ALJ's opinion make it clear that ALJ Lincoln considered plaintiff's new evidence, but found that it did not justify reopening the case. Such an indication is first present in the ALJ's statement that "no new evidence *material* to the issues resolved in that decision (by ALJ Cosentino) has been submitted." It is apparent from this statement that ALJ Lincoln *considered* the new evidence, but found it not to be material to the Secretary's first decision. This conclusion is supported by the fact that ALJ Lincoln's opinion does expressly consider and explain his rejection of Dr. Miller's report, which is one of the items of new evidence introduced by plaintiff. (R. 14). Finally, in making his determination that the Secretary's decision issued May 18, 1983, remains final and binding, ALJ Lincoln stated he considered the *entire* record. (R. 15). Thus, it is apparent that ALJ Lincoln did

give consideration to plaintiff's "new" evidence. ALJ's Lincoln's statements can be distinguished from those of the ALJ in *Hennings,* where the ALJ stated that "the decision of September 28, 1979 (the initial decision denying plaintiff's claim for benefits) is no longer subject to reopening for good cause and remains final and binding ..." 601 F.Supp. at 925. In that case, however, the initial decision *was* subject to re-opening because the ALJ had erroneously held that the 4–year period for re-opening had lapsed. Therefore, the court held that a new hearing was warranted because of the obvious fact that the ALJ had failed to fulfill his clear duty to *consider* whether good cause existed. As explained in *Hennings:*

> To find that the Secretary can, before the relevant four year period has elapsed, refuse to consider whether a claimant has shown "good cause" to reopen an earlier decision would be to permit the Secretary to make completely arbitrary decisions. Allowing the Secretary discretion in deciding whether "good cause" has been established is one thing; allowing her discretion in deciding whether *to consider* whether "good cause" has been established would be something quite different. Having provided by regulation that her decisions may be reopened for "good cause" within the specified four year period, the Secretary must, when a claimant within that period requests that a decision be reopened for "good cause," determine whether the claimant has shown "good cause" to reopen the decision, and only if the Secretary determines that the claimant has failed to show "good cause" may she apply the doctrine of administrative *res judicata* to the decision. Requiring less would violate the most fundamental tenets of our legal system.

601 F.Supp. at 926. (emphasis added).

■ In contrast to the *Hennings* case, ALJ Lincoln did not find that plaintiff was not entitled to have his new evidence considered; rather, he found that plaintiff's new evidence did not justify re-opening the case. Thus, because the ALJ fulfilled his duty to at least consider the new evidence, this is not a proper case for remand under the federal mandamus statute. For the foregoing reasons, it has been determined that plaintiff's claim (for benefits during a specific time period) is barred by the doctrine of administrative *res judicata.* It has been stated that this doctrine is equitable in nature and, as such, is subject to general principles of basic fairness. This court believes that it is not unfair to apply the doctrine to plaintiff in this case. Plaintiff had the full opportunity to present his claims at each of the several levels of review in the administrative process. Plaintiff was represented by competent counsel and it was his choice to bypass district court review of his first claim. There are strong reasons for requiring plaintiff to stand by this decision. A primary rationale for the doctrine of *res judicata* is that litigants themselves have a right to be protected from the burden of repetitive litigation. In the interests of the parties and the court, litigation must come to an end and remain in repose once a case is decided on the merits and proper appeals are taken. Because the plaintiff in this case exhausted his administrative remedies and chose not to proceed with district court review, application of *res judicata* is warranted.

It is therefore ordered that defendant's Motion For Summary Affirmance of the Secretary's decision to apply *res judicata* to plaintiff's first claim for benefits be granted.

### III.

The issue now remaining is whether substantial evidence supports the ALJ's finding that Mr. Burnett was not disabled during the time period May 18, 1983, to November 13, 1983. The ALJ based this part of his decision on the fact that Mr. Burnett's condition was improving and that he was capable of performing at least sedentary work during that period. The ALJ stated as follows:

> Prior to November 13, 1983, however, the record fails to establish that the

claimant's impairment was quite so severe. When he was hospitalized in November, he indicated his last seizure was in May. He had some weakness as the result of motor neurological deficits. Nevertheless, the record fails to establish that these conditions would have prevented him from performing at least sedentary work within the regulatory definition. (R. 14).

In reviewing those findings, this court may only reverse if the findings are not supported by substantial evidence. 42 U.S.C. § 405(a). In determining whether substantial evidence supports an ALJ's findings, the court must decide whether the record contains such relevant evidence as a reasonable person might accept as adequate to support the findings. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *See also Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). On review the court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Secretary, *Torres v. Secretary of Health and Human Services*, 677 F.2d 167 (1st Cir. 1982); *Cummins v. Schweiker*, 670 F.2d 81 (7th Cir.1982). However, it must be more than an uncritical rubber stamp. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir.1984). A court should consider the following guidelines in making its determination: (1) the clinical findings of treating and examining physicians; (2) the diagnoses of these physicians; (3) the subjective evidence of pain and disability as testified to by the plaintiff and as observed by others; and, (4) the claimant's educational background, work history, and present age. *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982).

■ In the present case, there is substantial evidence to support the ALJ's finding that Mr. Burnett was not disabled from May 18 to November 13, 1983. Plaintiff concedes that Mr. Burnett did not experience a major (or grand mal) seizure during this period. (R. 51–52). In addition, a hospital report dated May 9, 1983, by Dr. Veisey reported that Mr. Burnett had only two seizures in 13 months, and that his seizure on May 7 (upon admission to the hospital) was relatively minor. (R. 345). Although plaintiff's wife testified that Mr. Burnett had minor (petit mal) seizures during this period, the ALJ took this into account in determining that Mr. Burnett remained capable of performing sedentary work. The ALJ expressly noted that such seizures do cause weakness, but the brief nature of petit mal seizures supports the ALJ's finding that plaintiff could nonetheless have performed sedentary work. (see Footnote 2, *supra*).

The ALJ's conclusion that plaintiff could have performed sedentary work during this period is also supported by medical evidence. For example, on January 13, 1983, Dr. Ouchterloy, who was treating plaintiff during 1983, reported that the after-effects of his surgery make it unlikely that Mr. Burnett will be able to return to his *former* employment. Dr. Ouchterloy, however, further stated that "he is certainly employable though not at his previous type of work which involved heavy skilled work at a moderately hazardous work site where quick reactions were often necessary." (R. 199). This report is clearly relevant to Mr. Burnett's medical condition during 1983 and supports the ALJ's finding that he was capable of sedentary work prior to November 13, 1983.

The ALJ also rejected the opinion of Dr. Miller, plaintiff's treating physician, in determining that plaintiff was not disabled prior to November 13, 1983. His rationale was that Dr. Miller's opinion that plaintiff was disabled was based on the fact that plaintiff "had never worked at a desk job or any sedentary work." (R. 14). Because the ALJ felt that Dr. Miller was taking into account vocational factors rather than medical facts in giving his opinion, that opinion was rejected insofar as it ruled out the possibility of Mr. Burnett doing sedentary work. The pertinent part of Dr. Miller's report, dated June 18, 1984, states:

I have studied and treated this tumor and its effect on a person's ability to work and function. I have also personally observed this patient and tumor's af-

fect (sic) on him. Mr. Burnett is a 37 year old white male. I am advised he is a high school graduate who has worked approximately 15 years at Firestone Tire & Rubber Company in Decatur, Illinois. He was employed as a module operator by Firestone and his duties included loading and unloading 800–900 tires per shift onto conveyor. These tires weighed close to 38 pounds each. In addition, his job required that he climb on catwalks to make adjustments in large equipment and set up and run a tire grading machine which required accurate and quick use of his hands, arms and feet. The job also required that he think and act quickly. He has never worked at a desk job or any sedentary work. Based upon my training, experience and knowledge, it is my opinion that Mr. Burnett has been unable to engage in gainful activity of any type since at least April, 1982. It is further my opinion that he will be unable to engage in any such activity in the future because of the effects of his illness. (R. 420–1)

As is apparent from this report, Dr. Miller outlined the rigorous physical demands of Mr. Burnett's *past* work, which was clearly heavy in nature, and then stated that he had never done sedentary work. From this it is reasonable to conclude that Dr. Miller's opinion was that assuming plaintiff does not have the *vocational* ability to do sedentary work, plaintiff would be unable to engage in gainful activity. His *medical* opinion appears to be limited to a finding that plaintiff would be physically unable to do his *past* work. Therefore, there is reasonable support for the ALJ's rejection of Dr. Miller's report.

The ALJ's stated reasons for rejecting plaintiff's claim for disability prior to November of 1983 clearly meet the test recently set forth by the Seventh Circuit in *Stephans v. Heckler*, 766 F.2d 284 (7th Cir.1985), and *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir.1985). In these cases, the Court held that when the ALJ rejects a line of probative evidence, "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Stephans v. Heckler*, 766 F.2d at 287 (citing *Zalewski v. Heckler*, 760 F.2d at 166.) For the reasons stated above, the articulation given by the ALJ in this case provides a logical path to a conclusion that is supported by substantial evidence in the record as a whole.

*Ergo*, it is ordered that defendant's Motion For Summary Affirmance of the Secretary's decision is ALLOWED, and the plaintiff's Motion For Summary Reversal and/or Remand is DENIED.